**Milton MARKOWITZ, Plaintiff,**

v.

**Martin BRODY, James J. Crisona, Joseph S. DiMartino, Robert A. Frankel, Dr. Paul Hardin, Stephen E. Kaufman, Jeffrey B. Lane, Joseph J. McCann, Heath B. McLendon, Shearson Loeb Rhoades, Inc., Dreyfus Corporation, and Shearson Daily Dividend, Inc., Defendants.**

**Michael Allan LEVY, P. C., Plaintiff,**

v.

**BERNSTEIN–MACAULAY, INC., Dreyfus Corporation, Shearson Loeb Rhoades, Inc., and Shearson Daily Dividend, Inc., Defendants.**

**Nos. 80 Civ. 2602(RJW), 80 Civ. 2657(RJW).**

United States District Court, S. D. New York.

May 20, 1981.

cation motions. That motion is mooted by the Court's determination that class certification is proper.

544

Pomerantz Levy Haudek & Block, New York City, for plaintiff Michael Allan Levy, P. C., New York City; Abraham L. Pomerantz, Stanley M. Grossman, Roger W. Haudek, New York City, of counsel.

Abraham I. Markowitz, New York City, for plaintiff Milton Markowitz.

Willkie, Farr & Gallagher, New York City, for defendants Shearson Loeb Rhoades, Inc., Dreyfus Corp., Bernstein-Macaulay, Inc., James J. Crisona, Joseph S. DiMartino, Jeffrey B. Lane, and Heath B. McLendon; David L. Foster, Richard E. O'Connell, Pamela Samuelson, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for defendants Martin Brody, Robert A. Frankel, Stephen E. Kaufman, Joseph J. McCann, and Dr. Paul Hardin; Laurence Greenwald, Bruce H. Schneider, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

These two actions are maintained under section 36(b) of the Investment Company Act of 1940 ("the ICA"), 15 U.S.C. § 80a–35(b) ("Section 36(b)"). Each action has been brought as a stockholder derivative action on behalf of Shearson Daily Dividend, Inc. ("the Fund"), an open-ended, no-

load investment company of the type commonly known as a money-market fund. The complaint filed by Milton Markowitz in 80 Civ. 2602(RJW) ("the Markowitz action") names as defendants the Fund, its directors, Dreyfus Corporation ("Dreyfus"), and Shearson Loeb Rhoades, Inc. ("Shearson"). Dreyfus is an investment adviser to the Fund and Shearson is the Fund's principal underwriter. The complaint filed by Michael Allan Levy, P. C. ("Levy") in 80 Civ. 2657(RJW) ("the Levy action") names only the Fund, Shearson, Dreyfus, and Bernstein-Macaulay, Inc. ("Bernstein") as defendants. Bernstein is a subsidiary of Shearson and is a second investment adviser to the Fund.

The two complaints assert virtually identical claims that the advisory fees received by Bernstein and Dreyfus are excessive, and that their receipt thus constituted a breach of fiduciary duty under Section 36(b). The complaint in the Levy action sets forth a second count, which alleges that Dreyfus alone can provide all the Fund's necessary advisory and administrative services, and claims that Bernstein accordingly should receive no fee at all from the Fund. While it formally states only one count, the complaint in the Markowitz action also states a separate claim against the directors of the Fund, relating to their alleged failure to avoid the application of certain Federal Reserve Board regulations. Both actions ask that the illegally received fees be returned to the Fund, and also seek an award of costs and attorneys' fees.

The two cases are presently before the Court on several motions brought by the various defendants. In the Markowitz action, defendants Brody, Frankel, Kaufman, McCann, and Hardin (each a director of the Fund) have moved, pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., for an order dismissing the complaint as to them. Defendants Crisona, DiMartino, Lane, and McLendon (the other directors of the Fund), together with Shearson and Dreyfus, have moved for an order dismissing the complaint in their regard because Markowitz allegedly did not, as required by Rule 23.1, Fed.R.Civ.P., either make a "demand" upon the directors of the Fund in an effort to secure the relief that he seeks, or state in his complaint an adequate "excuse" for his failure to make such a demand. Alternatively, these defendants move to strike Markowitz's jury demand, on the ground that Section 36(b) creates an equitable cause of action as to which no right of trial by jury exists. In the Levy action, Shearson, Dreyfus, and Bernstein have moved that the complaint be dismissed as to them for Levy's alleged failure to satisfy the pleading requirements of Rule 23.1, Fed.R.Civ.P. Alternatively, these defendants contend that Levy's jury demand must be stricken. These defendants also seek a protective order staying Levy's interrogatories and demand for document production pending decision of their motion to dismiss.

## DISCUSSION

■ Several aspects of the instant motions may be dealt with fairly briefly. First, counsel for Markowitz and Levy have stated, in a brief filed jointly with the Court, that "[a]ll claims in the *Markowitz* action, except those against Dreyfus and Shearson based upon their receipt of excessive advisory fees, are being withdrawn." Plaintiffs' Memorandum in Opposition at 2 n.**. The motions presently before the Court in the Markowitz action are accordingly granted as unopposed insofar as they seek dismissal of the complaint on behalf of directors of the Fund. Second, the Court is informed by counsel that the parties in the Levy action have agreed to extend defendants' time to respond to Levy's discovery request until thirty days after the Court's decision on the motion to dismiss. Defendants' motion in the Levy action is therefore denied as moot insofar as it seeks a protective order staying Levy's interrogatories and demand for document production. Third, the Court of Appeals for this Circuit has recently held that no right to a jury trial exists in Section 36(b) actions such as these. *In re Gartenberg*, 636 F.2d 16, 18 (2d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981). The motions before the Court are granted insofar

as they seek to strike Markowitz's and Levy's jury demands.

The substantial question before the Court is thus simply whether the Markowitz action should be dismissed as to Shearson and Dreyfus, or the Levy action should be dismissed as to Shearson, Dreyfus, and Bernstein, because one or both complaints fail to comply with Rule 23.1, Fed.R.Civ.P. Rule 23.1, entitled "Derivative Actions by Shareholders," reads as follows:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

A derivative action may not be maintained, then, unless the plaintiff (1) verifies his or her complaint; (2) makes certain allegations respecting his or her status as a shareholder of the corporation in question, the noncollusiveness of the action, and his or her efforts to obtain the desired action from the directors of the corporation; and (3) fairly and adequately represents the interests of similarly situated shareholders. In a case where Rule 23.1 applies, the failure of the plaintiff to satisfy the prerequisites set forth in the rule requires that the action be dismissed. *See Brody v. Chemical Bank*, 66 F.R.D. 87, 90 (S.D.N.Y.), *aff'd*, 517 F.2d 932 (2d Cir. 1975) (dismissing action, with leave to replead, for failure to make sufficient allegations of "demand or excuse" under Rule 23.1).

The two complaints before the Court differ markedly in the degree to which they comply with Rule 23.1. The complaint filed in the Levy action makes no attempt whatsoever to conform to the pleading requirements set forth in Rule 23.1. On the other hand, Markowitz's complaint is pleaded in accordance with Rule 23.1; it allegedly runs afoul of the rule in the "excuses" that it proffers for Markowitz's failure to make a "demand" on the directors of the Fund. While the Court recognizes that some of the parties' arguments run to the sufficiency, or insufficiency, of both complaints, the Court believes that the marked difference between the complaints in their level of compliance with Rule 23.1 makes it more convenient to deal with each complaint separately.

### The Sufficiency of Levy's Complaint Under Rule 23.1

The complaint filed in the Levy action concededly does not conform to the pleading requirements of Rule 23.1. The question before the Court is whether the failure of Levy's complaint to satisfy this rule necessitates its dismissal as to defendants Shearson, Dreyfus, and Bernstein. The Court holds that dismissal is required on account of this failure.

Levy argues (as it must, in view of the fact that its complaint utterly fails to comply with the pleading requirements of Rule 23.1) that Rule 23.1 is wholly inapplicable where, as here, the action is maintained

under Section 36(b).[1] In support of this rather startling position, Levy argues that certain of the procedural requirements of Rule 23.1 cannot be harmonized with the substantive provisions of Section 36(b). Pointing out that, in cases of conflict between the federal rules and substantive provisions of federal law, 28 U.S.C. § 2072 mandates that the substantive provisions must prevail, Levy contends that the disharmony between Rule 23.1 and Section 36(b) requires the Court to treat Rule 23.1 as a nullity here.

■■ The Court cannot accept Levy's argument. Congress undeniably has the power to enact statutes that supersede conflicting provisions of the Federal Rules of Civil Procedure. *United States v. Gustin-Bacon Division, Certain-Teed Products Corp.*, 426 F.2d 539, 542 (10th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 63, 27 L.Ed.2d 63 (1970). However, it has been said that "[u]nless congressional intent to do so is clear, . . . 'a subsequently enacted statute should be so construed as to harmonize with the Federal Rules if that is at all feasible.' " *Untermeyer v. Fidelity Daily Income Trust*, 79 F.R.D. 36, 45 (D.Mass.), *vacated on other grounds*, 580 F.2d 22 (1st Cir. 1978) (quoting 7 Moore's Federal Practice ¶ 86.04[4], at 4966 (2d ed. 1980)). Here, Levy concedes that Section 36(b) does not even arguably conflict with Rule 23.1 insofar as it requires verification of the complaint and an assertion that the action is not brought collusively to confer jurisdiction that otherwise would not have existed. Plaintiff's Supplemental Memorandum in Opposition at 2. In the Court's view, then, no basis exists for a wholesale rejection of Rule 23.1 in Section 36(b) cases.

As noted, the complaint filed in the Levy action does not even attempt to comply with the requirements of Rule 23.1. Thus, it is not verified and makes no allegation of non-collusiveness. Courts generally hold that such deficiencies are ground for dismissal. *See, e. g., Walden v. Elrod*, 72 F.R.D. 5, 12–13 (W.D.Okla.1976) (dismissing derivative action pursuant to Rule 23.1, with leave to amend, for failure to allege non-collusiveness); *Nussbacher v. Continental Illinois Bank & Trust Co.*, 61 F.R.D. 399, 401–02 (N.D.Ill.1973), *rev'd on other grounds*, 518 F.2d 873 (7th Cir. 1975) (dismissing stockholder's derivative action, with leave to file verified amended complaint, for failure to verify complaint as required by Rule 23.1); *Marcus v. Textile Banking Co.*, 38 F.R.D. 185, 186 (S.D.N.Y.1965) (describing failure to verify complaint in a stockholder's derivative action as a "fatal defect" under predecessor to Rule 23.1).

■■ Levy argues that these two deficiencies, being merely inadvertent in this case, are of insufficient substantive import to warrant dismissal. Were the defects in Levy's complaint confined to the failure to verify and to allege non-collusiveness, the Court might well be inclined to allow them to be cured by a separate affidavit.[2] How-

---

1. Section 36(b) reads as follows in relevant part:

> For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

Since it is uncontested that both the Markowitz action and the Levy action, being brought "on behalf of" the Fund, are "derivative actions" within the meaning of Rule 23.1, there can be no doubt that the rule is at least on its face applicable here. *See* Rule 1, Fed.R.Civ.P. (providing that Federal Rules of Civil Procedure "govern the procedure in the United States district courts in *all* suits of a civil nature") (emphasis added).

2. The verification requirement of Rule 23.1 is intended only to clear the courts of strike suits and not to be a general impediment to share-

ever, Levy's complaint also fails to allege that Levy was a stockholder of the Fund at the time the events in question occurred. Rule 23.1 specifically provides that the complaint in a derivative suit must assert that the plaintiff was a shareholder of the corporation at the time the allegedly wrongful activity occurred. While it originated as a means of protecting against corporate forum shopping,[3] today "[t]he contemporaneous ownership rule is designed to prevent the 'buying' of a lawsuit by persons who purchase stock with the intention of bringing a derivative action and winning damages for the corporation which will increase the value of the stock." *In re Penn Central Transportation Co.*, 341 F.Supp. 845, 846 (E.D.Pa.1972). *See also Phillips v. Bradford*, 62 F.R.D. 681, 685 (S.D.N.Y.1974); 7A C. Wright & A. Miller, Federal Practice & Procedure § 1828, at 342 (1972). The papers before the Court have led the Court to presume that Levy's failure to allege contemporaneity of ownership results from Levy's inability to make such an allegation, and not from inadvertence on the part of Levy's counsel.[4] Since the Court holds *infra* that the contemporaneous ownership requirement is fully applicable in Section 36(b) cases, Levy's complaint must be dismissed.

Levy vigorously asserts that the contemporaneous ownership rule is inapplicable in Section 36(b) cases such as this. First, Levy notes the differing language of Rule 23.1 and Section 36(b), observing that Rule 23.1 requires the plaintiff to have been a "shareholder" at the time of the transaction, whereas Section 36(b) allows any "security holder" to maintain an action. In Levy's view, since Rule 23.1 requires contemporaneous ownership only of *shareholders*, but Section 36(b) authorizes suit by any *security holder*, application of the contemporaneous ownership requirement in Section 36(b) cases would be nonsensical, because only owners of capital stock, and not other potential Section 36(b) plaintiffs such as warrant holders or owners of debentures or bonds, would be subject to the rule. Reasons Levy, if contemporaneous ownership may not be required of *all* potential Section 36(b) plaintiffs, it should not be required of any.

In support of this argument, Levy cites certain cases decided under section 16(b) of

holder derivative actions. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966). Nothing in the record suggests to the Court that the Levy action is cast in the strike suit mold, or that Levy's failure to verify its complaint resulted from anything other than an innocent misunderstanding of the applicability of Rule 23.1 in Section 36(b) cases. Under such circumstances, there is authority for the trial court, instead of dismissing the complaint, to require the plaintiff simply to submit a verifying affidavit. *See, e. g., Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570, 577–78 (S.D.N.Y.1972).

As regards the requirement that non-collusiveness be alleged, the Court notes that this portion of Rule 23.1 is founded on a concern to prevent a corporation from making a federal case out of a claim against a co-citizen by arranging for a noncitizen stockholder to bring the claim as a derivative action, thus creating federal diversity jurisdiction that otherwise would not have existed. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1830, at 368 (1972). Where, as here, federal subject matter jurisdiction rests on a federal question rather than diversity, the policy underlying the requirement that non-collusiveness be alleged is plainly not significantly implicated. Thus,

there is authority for disregarding a failure to allege non-collusiveness where the case involves a federal question and the record reveals no hint of collusion. *See, e. g., Weisfeld v. Spartans Industries, Inc., supra*, 58 F.R.D. at 577–78.

**3.** The Supreme Court enunciated the rule in the landmark case of *Hawes v. City of Oakland*, 104 U.S. 450, 26 L.Ed. 827 (1881). For an early expression of the view that the contemporaneous ownership requirement supplements the rule requiring an allegation of non-collusiveness, see Seasongood, *Right of a Stockholder, Suing in Behalf of a Corporation, to Complain of Misdeeds Occurring Prior to His Acquisition of Stock*, 21 Harv.L.Rev. 195 (1908).

**4.** The papers before the Court do not state whether or not Levy in fact was a security holder of the Fund at the time of the events in question. However, the effort expended by Levy on this point inclines the Court to believe that Levy's failure to allege contemporaneous ownership is not, as may well be the case with respect to Levy's failure to verify and to allege non-collusiveness, merely the result of inadvertence.

the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ("Section 16(b)"). Section 16(b) authorizes actions on behalf of a corporation to recover short-swing profits realized by corporate insiders as a result of their purchases and sales of the corporation's equity securities. Like Section 36(b), Section 16(b) authorizes "the owner of any security" of the corporation, and not just the owners of its capital stock, to maintain an action to recover such profits for the corporation. In *Blau v. Mission Corp.*, 212 F.2d 77, 79 (2d Cir.), *cert. denied*, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954), the Court of Appeals for this Circuit held that a Section 16(b) complaint "is not defective for failure to allege that plaintiff was a shareholder at the time of the transaction complained of" because Rule 23.1 cannot be interpreted to "override the direct mandate of § 16(b) that suit may be brought 'by the owner of any security' without qualification." In Levy's view, the similar language contained in Section 16(b) and Section 36(b) requires the Court to carry *Mission's* holding under Section 16(b) over to Section 36(b).[5] Shearson, Dreyfus, and Bernstein, on the other hand, argue that the rule enunciated in *Mission* is based on policy considerations unique to Section 16(b), and accordingly urge the Court to confine *Mission* to Section 16(b) cases.

■ Levy implicitly suggests that the *Mission* court refused to require contemporaneous ownership in Section 16(b) cases merely because Section 16(b) uses the phrase "owner of any security" whereas Rule 23.1 employs the term "shareholder." The Court cannot accept this argument. As noted earlier, courts should strive to construe the federal rules so as to harmonize them with substantive federal statutes if such construction is at all possible. In *Mission*, Rule 23.1 and Section 16(b) could easily have been harmonized by reading the term "shareholder" contained in Rule 23.1 to include, for the purposes of Section 16(b), any person that has standing to maintain a Section 16(b) action.[6] Under such a reading, the contemporaneous ownership requirement of Rule 23.1 would not make it more difficult for shareholders than for owners of other corporate securities to maintain Section 16(b) actions, because *every* Section 16(b) plaintiff would be required to demonstrate contemporaneity of ownership to be entitled to bring an action.

In the Court's view, *Mission's* holding resulted not from the language of the provisions in question, but rather from the court of appeals' conclusion that the policy considerations underlying Section 16(b) strongly evidenced a congressional intention that the contemporaneous ownership requirement of Rule 23.1 not be applied in Section 16(b) cases. Concededly, the *Mission* decision itself does not articulate in any detail the rationale for the court's holding. However, one of the cases cited by the *Mission* court, *Pellegrino v. Nesbit*, 203 F.2d 463 (9th Cir. 1953), provides a detailed discussion of the policy rationale for disregarding the contemporaneous ownership rule in the context of Section 16(b) cases. The *Pellegrino* court noted that "Section 16(b) establishes a statutory policy intended to prevent the abusive practices which were found to result from short-swing insider trading of securities, practices which are harmful both to the other stockholders *and to the general pub-*

5. The rule adopted in *Mission* has consistently been reaffirmed by the courts of this and other circuits. *See, e. g., Magida v. Continental Can Co.*, 231 F.2d 843, 846 n.1 (2d Cir.), *cert. denied*, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); *Morales v. Great American Corp.*, 445 F.Supp. 869, 873–74 (M.D.La.1978); *Rothenberg v. United Brands Co.*, [1977–78] Fed. Sec.L.Rep. (CCH) ¶ 96,045, at 91,692 (S.D.N.Y. 1977). The rule appears to have been first enunciated by Judge Conger of this Court in *Benisch v. Cameron*, 81 F.Supp. 882, 884–85 (S.D.N.Y.1948).

6. There would be nothing novel in adopting such a broad construction of the term "shareholder" as used in Rule 23.1. That term has, where the substantive provisions of the federal securities laws permit security holders other than owners of capital stock to maintain a derivative action, been interpreted to include both owners of convertible debentures, *see Hoff v. Sprayregan*, 52 F.R.D. 243, 247 (S.D.N.Y.1971), and warrant holders, *see Entel v. Guilden*, 223 F.Supp. 129, 131 (S.D.N.Y.1963).

lic." *Id.* at 466 (emphasis added).[7] By way of further explanation, the court remarked that "[t]o the extent the statute is intended to protect the public from market fluctuations intentionally caused by or within the prior knowledge of corporate insiders seeking short-swing profits, the plaintiff in a § 16(b) suit is merely an instrument for effectuating the statutory policy." *Id.* The court concluded that it "need not be concerned with ... the substantiality of appellant's shareholder interest," and further stated that "the stockholder need not have owned stock at the time the transaction of which he complains took place." *Id.*

The analysis of the *Pellegrino* court, and presumably the holding of the *Mission* court,[8] thus rested on a view that the congressional purpose in enacting Section 16(b) was to protect the public generally as well as security holders of the corporation. In other words, these courts saw the statutorily protected class as including a number of persons that Congress plainly did not anticipate would be owners of corporate securities when the transactions triggering Section 16(b) liability occurred. Since Congress intended for any member of the protected class to be able to bring a Section 16(b) action, these courts concluded that the anti-champerty policy underpinning the contemporaneous ownership requirement of Rule 23.1 was not significantly implicated in Section 16(b) cases. Indeed, given Congress' intention to enable *all* members of the protected class to sue, but its decision to confer standing to sue only on persons who are corporate security holders at the commencement of the litigation, these courts might well have reasoned that Congress must have intended to *encourage* the very type of champerty that the contemporaneous ownership rule seeks to avoid. That is, the only way a non-contemporaneous security holder can maintain a Section 16(b) action is to "buy" a lawsuit, by purchasing corporate securities after the transactions in question, precisely in the manner prohibited by Rule 23.1.

■ In this Court's view, the rule that the contemporaneous ownership requirement of Rule 23.1 is inapplicable in Section 16(b) cases developed as a result of the foregoing policy analysis, and not because of the mere difference in language between Section 16(b) and Rule 23.1. The Court's decision in the instant case whether contemporaneous ownership is required in actions maintained under Section 36(b) thus should not turn on whether the language of Section 36(b) is similar to that of Section 16(b), which it undoubtedly is, but rather should depend on a determination whether the policy considerations that motivated the *Mission* and other courts pertain with equivalent force in the Section 36(b) context. The basic question for the Court, then, is whether Section 36(b), in similar fashion to Section 16(b), was in part enacted to protect persons who do not own any security of the investment company at the time the defendant investment adviser receives its fee and commits the alleged breach of fiduciary duty. For the reasons stated below, the Court holds that Section 36(b) is not intended to protect non-contemporaneous security holders, and that such persons should accordingly not be permitted to maintain Section 36(b) actions.

Section 36(b) was added to the ICA by the Investment Company Amendments Act of 1970, Pub.L.No.91–547, 84 Stat. 1413 (1970). The Senate Report that accompanied the bill ultimately enacted as the 1970 amendments made it clear that Section 36(b) was enacted in response to congressional concern that the structure of the mutual fund industry prevented arm's-

---

7. The *Pellegrino* court relied on S.Rep.No.1455, 73d Cong., 2d Sess. (1934) in reaching this conclusion. This report explicitly states that "[t]he Securities Exchange Act of 1934 aims to protect the interests of *the public* against the predatory operations of directors, officers, and principal stockholders of corporations by preventing them from speculating in the stock of the corporations to which they owe a fiduciary duty." *Id.* at 68 (emphasis added).

8. A policy analysis similar to that articulated by the *Pellegrino* court was subsequently advanced by the Court of Appeals for this Circuit in *Magida v. Continental Can Co., supra* note 5, 231 F.2d at 846–47.

length bargaining between a mutual fund and its investment adviser concerning the amount of the investment adviser's fee. Specifically, the report noted that a typical mutual fund is organized by its investment adviser, which provides the mutual fund with almost all management services, and that the mutual fund's shares are bought by investors who rely on the investment adviser's service. S.Rep.No.184, 91st Cong., 1st Sess. (1969), *reprinted in* [1970] U.S.Code Cong. & Adm.News 4897, 4901. As a result, "a mutual fund cannot, as a practical matter sever its relationship with the adviser." *Id., reprinted in* [1970] U.S.Code Cong. & Adm.News at 4901. The absence of an arm's-length relationship between the mutual fund and its adviser creates, according to the report, an inherent danger that the fees paid by the mutual fund to its adviser will be excessive. Congress therefore enacted Section 36(b), which at once imposed a fiduciary duty upon a mutual fund's investment adviser with respect to fees and other payments received from the mutual fund, and authorized suits by the Securities and Exchange Commission ("the SEC"), as well as security holders of the mutual fund, to remedy breaches of this fiduciary duty.

Thus, Section 36(b) exists to control a particular abuse that may result from the relationship between an investment company and its investment advisers. It is plain enough how such abuses potentially impact on security holders of an investment company: every dollar that the investment company pays to its investment advisers is a dollar that is unavailable to be paid out to the security holders of the company. However, the Court sees no comparable potential impact on persons who are not security holders of the investment company at the time the investment advisers' fees are paid. In the Section 16(b) context, the nondisclosure of inside information may impact on the investment decisions not only of the company's security holders, but also of members of the public at large, meaning that non-contemporaneous security holders are properly included in the class protected by Section 16(b). The Court notes, however, that an investment company such as the Fund is required to file an annual report with the SEC that discloses the amount each of the company's investment advisers received as a fee, the method by which the fees were calculated, and the details of the services provided by the advisers.[9] This disclosure enables the general public to judge whether or not the investment advisers' fees are excessive and to make an investment decision based on this judgment, and thus protects the public from falling victim to the abuses that may result from the peculiar nature of the investment company—investment adviser relationship. As a result, while persons who have already invested in a mutual fund (that is, the current security holders of the mutual fund) must depend entirely on Section 36(b) to protect themselves from the mutual fund's payment of excessive advisory fees, those persons who have not yet made their investment decision at the time such a payment occurs (that is, the general public) are protected by the SEC's disclosure requirements, and need not rely at all upon Section 36(b).

■■■■ The Court is constrained by the foregoing to conclude that Section 36(b), unlike Section 16(b), is not intended to protect the non-investing public. The rationale for disregarding the contemporaneous ownership requirement in Section 16(b) cases thus does not apply to Section 36(b) cases. Moreover, the Court finds that the policy considerations that support the contemporaneous ownership requirement in general are fully implicated in the context

---

9. The SEC is authorized to require the filing of such annual reports by section 30(a) of the ICA, 15 U.S.C. § 80a–29(a). The requirement of filing such an annual report is imposed by 17 C.F.R. § 270.30a–1(a). 17 C.F.R. § 270.30a–2(a) directs that this report be made on SEC form N–1R. Form N–1R is described in 17 C.F.R. § 274.101; the text of the form, as amended, is reproduced in 5 Fed.Sec.L.Rep. (CCH) ¶ 52,301, at 40,039–70. Items 20 through 23 require provision of the information referred to in text *supra* concerning the company's investment advisers. *Id.* at 40,048–49.

of Section 36(b).[10] The Court accordingly holds that the contemporaneous ownership requirement of Rule 23.1 is fully applicable in the Section 36(b) context. Since the complaint filed in the Levy action does not allege contemporaneous ownership, the motion to dismiss that complaint is granted.

### Sufficiency of Markowitz's Complaint Under Rule 23.1

Unlike Levy, Markowitz has, in his complaint, at least attempted to comply with the pleading requirements imposed by Rule 23.1. While it is on its face properly pleaded, defendants Shearson and Dreyfus contend that the substantive allegations of Markowitz's complaint fail to satisfy the rule's so-called "demand or excuse" pleading requirement, which states that "[t]he complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors ... and the reasons for his failure to obtain the action or for not making the effort." Markowitz concededly made no effort to gain the relief that he seeks by making a "demand" upon the directors of the Fund. Shearson and Dreyfus contend that Markowitz has failed to proffer an adequate "excuse" for his failure to make such a demand, and that his complaint is accordingly insufficient under Rule 23.1 and must be dismissed.

Markowitz advances three arguments in opposition to the position adopted by Shearson and Dreyfus. First, in similar, albeit narrower, fashion to Levy, he contends that the Rule 23.1 requirement of pleading "demand or excuse" is inconsistent with the substantive provisions of Section 36(b), meaning that the Court is barred from en-

forcing that requirement in this case. Second, Markowitz contends that the complaint recites an adequate "excuse" for the absence of a demand. Markowitz also contends that, even assuming that his complaint does run afoul of the demand or excuse requirement, dismissal of the complaint is improper here because Shearson and Dreyfus have no standing to raise this requirement as a ground for dismissal of a Section 36(b) action.

### A

The first reason put forth by Markowitz in opposition to the motion to dismiss is that the requirement of pleading "demand or excuse" imposed by Rule 23.1 does not apply to derivative actions maintained under Section 36(b). In support of this position, Markowitz begins by asserting that, whereas other types of derivative actions may, under the business judgment rule, often be "terminated" or "cut off" by a vote of a quorum of disinterested directors, see note 14 *infra*, no such termination is ever possible in the case of a derivative action brought under Section 36(b). Reasoning that the only purpose of the Rule 23.1 requirement of pleading "demand or excuse" is to give the disinterested corporate directors the opportunity to terminate the derivative suit in question, Markowitz concludes that, since it is impossible to terminate a derivative suit brought under Section 36(b), it is unreasonable to require a Section 36(b) plaintiff to plead "demand or excuse" in accord with Rule 23.1. On the basis of this purported unreasonableness, Markowitz asserts that 28 U.S.C. § 2072 bars enforcement of this Rule 23.1 pleading requirement here.

10. The Court notes that Section 36(b) provides that "[n]o award of damages shall be recoverable [under Section 36(b)] for any period prior to one year before the action was instituted." 15 U.S.C. § 80a–35(b)(3). This provision is one among several in Section 36(b) that limit the potential Section 36(b) liability of an investment adviser. The one-year limitation period, by limiting the universe of "marketable" Section 36(b) claims to those that accrued less than a year earlier, is thus an independent constraint on a fair number of the champertous lawsuits that the contemporaneous ownership requirement precludes. The existence of this provision in Section 36(b) thus diminishes the extent to which the anti-champerty policy underpinning the contemporaneous ownership requirement is implicated in the Section 36(b) context. However, it is plain that the one-year limitation period in no way operates to discourage the champertous assignment of claims that are less than a year old, meaning that even in the Section 36(b) context the contemporaneous ownership requirement is necessary to guard against creating a market in excessive fee actions against mutual fund investment advisers.

The Court is unable to accept Markowitz's argument. Even assuming that enforcement of the Rule 23.1 pleading requirements in Section 36(b) cases would be "unreasonable" in the manner described above, the Court is at a loss to see how 28 U.S.C. § 2072 may be read to bar the Court from enforcing those requirements. The relevant portion of 28 U.S.C. § 2072 states merely that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." The Court is willing to accept Markowitz's vigorous assertion that he has an absolute, indefeasible right to maintain a derivative action under Section 36(b). See Burks v. Lasker, 441 U.S. 471, 484, 99 S.Ct. 1831, 1840, 60 L.Ed.2d 404 (1979) (dictum to the effect that Section 36(b) does not allow board to cut off a Section 36(b) derivative suit). Thus, the Court agrees that the federal rules could not be interpreted to allow a Section 36(b) action to be terminated by the vote of a quorum of the corporation's disinterested directors; if so interpreted, the rules would unquestionably "modify" a security holder's substantive right to sue under Section 36(b). The Court does not believe that a similar conclusion flows when a security holder is merely required to plead a Rule 23.1 "demand or excuse" as a predicate to maintaining a Section 36(b) action. Even assuming for the moment that a demand would serve no purpose because termination is not available, and that enforcement of the Rule 23.1 pleading requirements might thus fairly be termed "unreasonable," it is plain to the Court that a security holder's right to sue under Section 36(b) would in no way be modified or abridged within the meaning of 28 U.S.C. § 2072 simply by requiring compliance with Rule 23.1 and hence insisting that the security holder make a pointless demand. Section 2072 is not triggered by an instance where application of the federal rules would be unreasonable, but only in a case where the rules directly conflict with substantive rights. No such conflict exists here.

Thus, the two courts that previously considered the issue concluded that the Rule 23.1 requirement of pleading "demand or excuse" applies in Section 36(b) cases. See Untermeyer v. Fidelity Daily Income Trust, supra, 79 F.R.D. at 44–46 (holding that Section 36(b) plaintiff is required to plead "demand or excuse" in accord with Rule 23.1); Boyko v. Reserve Fund, Inc., 68 F.R.D. 692, 696 (S.D.N.Y.1975) (noting, in course of holding that Section 36(b) plaintiff had proffered an adequate excuse for failing to make a Rule 23.1 demand, that "[t]he conclusion reached by this court is not to be construed as a holding that Rule 23.1 has been in any way abrogated by Section 36(b)").[11] Markowitz's unreasonableness argument really amounts to an argument that he ought to be *excused* from his failure to make a Rule 23.1 *demand*, not an argument that the requirement of pleading *either* demand *or* excuse is inapplicable in Section 36(b) cases. The Court accordingly rejects Markowitz's argument that the Rule 23.1 requirement of pleading demand or excuse does not apply here, and now proceeds to consider whether Markowitz's failure to make a Rule 23.1 demand should be excused.

B

Markowitz's complaint suggests three potential "excuses" for Markowitz's admitted failure to make a Rule 23.1 demand upon the directors of the Fund prior to commencing this action. First, Markowitz contends that no Rule 23.1 demand was required here because each of the Fund's nine directors is named as a defendant in this action. Next, Markowitz argues that his failure to make a demand should be excused because four of the Fund's directors are "interested persons" within the meaning of section 2(a)(19) of the ICA, 15 U.S.C. § 80a–2(a)(19). Finally, Markowitz contends that demand was not required here because Section 36(b) de-

11. Judge Tauro, the author of the decision in *Untermeyer v. Fidelity Daily Income Trust, supra*, has recently reaffirmed his view that a Rule 23.1 "demand or excuse" must be pleaded in a Section 36(b) complaint. *See Grossman v. Johnson*, 89 F.R.D. 656, 661 (D.Mass.1981).

rivative actions are never terminable by a vote of the investment company's directors, meaning that Rule 23.1 demands serve no purpose in the Section 36(b) context. The Court treats each of these arguments in turn below.

### 1. Directors as Defendants

 Markowitz's first purported excuse may be fairly quickly rejected. As noted earlier, the Court, by today's decision, dismisses Markowitz's complaint as to each of the Fund's directors named as defendants in the Markowitz action. The factual predicate for this excuse thus no longer pertains. In any event, it is well settled that a failure to make a Rule 23.1 demand should not be excused merely because the plaintiff has named a majority of the directors as defendants. *See, e. g., Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir. 1977); *Lewis v. Valley*, 476 F.Supp. 62, 64 (S.D.N.Y.1979). The fact that each of the Fund's nine directors was named as a defendant in Markowitz's complaint thus affords Markowitz no excuse for his failure to make a Rule 23.1 demand.

### 2. Directors as Interested Persons

 The parties agree that four of the Fund's directors are "interested persons" within the meaning of section 2(a)(19) of the ICA. Markowitz contends that the status of these directors as interested persons obviated the requirement of a Rule 23.1 demand in this case. The general rule, of course, is that demand will be excused when the plaintiff shows that a majority of the company's directors has an interest in the subject matter of the lawsuit such that the court concludes that it would have been futile to ask the board to act. *Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir. 1980). In such a case, the court's finding of "futility" is based on its conclusion that the majority will, on account of its interest in the litigation, inevitably vote against taking the action requested. *See* Comment, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U.Chi.L.Rev. 168, 173 (1976).

In *Untermeyer v. Fidelity Daily Income Trust*, 580 F.2d 22, 23 (1st Cir. 1978), the Court of Appeals for the First Circuit applied this general rule in the Section 36(b) context, holding that a Rule 23.1 demand is excused where fifty percent or more of the mutual fund's trustees are "interested persons" within the meaning of section 2(a)(19) of the ICA. At the same time, the court stated that demand is still required when directors numbering less than fifty percent of the board are interested persons. On the other hand, in an earlier Section 36(b) case, *Boyko v. Reserve Fund, Inc., supra*, 68 F.R.D. at 696, Judge Gagliardi of this Court found futility, and thus excused demand, where only two of the mutual fund's six directors were interested persons. Judge Gagliardi stated his holding· as follows: "the [demand or excuse] requirement of Rule 23.1 is met in a Section 36(b) action where it is alleged in the complaint that there is at least one 'interested person' [within the meaning of section 2(a)(19) of the ICA] on the board of directors of a mutual fund." *Id.* at 697. In the instant case, at least one, but not fifty percent or more, of the Fund's directors are interested persons. The sufficiency of Markowitz's second proffered excuse thus depends on whether the Court follows the rule enunciated in *Untermeyer* or that laid down in *Boyko*.

In order for the Court to decide which case to follow, it is necessary to consider the reasoning that led the *Boyko* court to depart from the general practice under Rule 23.1. As is elucidated in greater detail *infra*, the holding in *Boyko* rested on Judge Gagliardi's conclusions (1) that Congress, in enacting Section 36(b), assumed mutual fund directors, interested or noninterested, to be inherently hostile to Section 36(b) actions, and (2) that requiring a Rule 23.1 demand in Section 36(b) actions would allow a noninterested director majority of the board to vote to terminate such actions. This Court, having the benefit of the Supreme Court's recent decision in *Burks v. Lasker, supra*, cannot agree with either of the conclusions relied upon in *Boyko*, and accordingly declines to follow the *Boyko* rule.

*Burks v. Lasker* involved an action under section 13(a)(3) of the ICA, 15 U.S.C. § 80a–13(a)(3), against several members of a mutual fund's board of directors, and the mutual fund's investment adviser. 441 U.S. at 473 & n.1, 99 S.Ct. at 1834 & n.1. The Supreme Court, noting that the ICA requires at least forty percent of a mutual fund's board to be composed of disinterested persons, *see* 15 U.S.C. §§ 80a–2(a)(19), 80a–10(a), concluded that Congress consciously chose to address the conflict-of-interest problem inherent in the structure of investment companies by assuring that the board of an investment company would have a certain number of independent directors capable of performing a "watchdog" function. *Id.* at 482–85, 99 S.Ct. at 1839–1841. On this basis, the Court held that Congress, in enacting the ICA, had not required the federal courts absolutely to forbid director termination of all nonfrivolous actions under the ICA. *Id* at 486, 99 S.Ct.

at 1841. The decision in *Burks v. Lasker* thus stands in opposition to any conclusion that the ICA is generally informed by a congressional presumption that investment company directors are inherently antagonistic toward the notion of seeking redress from their company's investment adviser.

 In *Boyko*, Judge Gagliardi concluded that Section 36(b) was informed by precisely such a congressional presumption. 68 F.R.D. at 696. In reaching this conclusion, he noted first that Section 36(b) permits only the SEC or a shareholder of a mutual fund, and not the mutual fund itself, to maintain an action to recover excessive fees from the mutual fund's investment adviser. *Id.* at 695.[12] In Judge Gagliardi's view, Congress failed to provide the mutual fund with its own right of action because it presumed that the inevitable directorial hostility to Section 36(b) actions would, as a practical matter, preclude the

**12.** The Court, while it need not decide the issue to resolve the questions posed by the parties' instant motions, notes its disagreement with the proposition that a mutual fund itself has no right of action under Section 36(b). Concededly, Section 36(b) itself refers only to actions by the SEC and by shareholders, and the legislative history states simply that "[u]nder this proposed legislation either the SEC or a shareholder may sue in court on a complaint that a mutual fund's management fees involve a breach of fiduciary duty." S.Rep.No.184, *supra, reprinted in* [1970] U.S.Code Cong. & Adm.News at 4903. The Court believes, however, that a private right of action on behalf of the mutual fund should be implied from Section 36(b). The existence of such a private right of action depends, of course, on analysis of the four factors set forth by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Court views all four *Cort v. Ash* factors to cut in favor of implying a private right of action under Section 36(b) on behalf of the mutual fund itself: (1) Mutual funds are clearly intended to be the primary class benefitted by Section 36(b). (2) The legislative history in no way shows a congressional purpose to deny such a right of action, and in fact plainly contemplates that the directors of a mutual fund will play a significant role in dealing with excessive fee problems. S.Rep.No. 184, *supra, reprinted in* [1970] U.S.Code Cong. & Adm.News at 4903. (3) Allowing a Section 36(b) suit to be brought by the board of directors, the body best equipped to prosecute such an action by virtue of its intimate knowledge of the contractual arrangement at issue,

would certainly aid in achieving the congressional goal of deterring payment of excessive fees. *See Untermeyer v. Fidelity Daily Income Trust, supra,* 79 F.R.D. at 46 n.30. (4) Finally, it is plain that the Section 36(b) cause of action is not one traditionally relegated to state law; indeed, it was created precisely as a result of congressional dissatisfaction with the results obtained in excessive fee actions maintained under state law. Randall, *Fiduciary Duties of Investment Company Directors and Management Companies Under the Investment Company Act of 1940,* 31 Okla.L.Rev. 635, 653–54 (1978).

The Court also views implication of a private right of action to be doctrinally sound. Shareholder suits under Section 36(b) are unfailingly described by the courts and the commentators as "derivative actions"; Section 36(b) itself even describes such suits as being "on behalf of" the company. 15 U.S.C. § 80a–35(b). It is hornbook law, however, that a predicate to a proper shareholder derivative action is the existence of a *corporate* cause of action. H. Henn, Handbook of the Law of Corporations § 358, at 750 (2d ed. 1970). If a mutual fund has no Section 36(b) right of action, one is left to wonder how it is proper to describe a shareholder's Section 36(b) action as a derivative action. Implying a Section 36(b) right of action on behalf of a mutual fund thus not only would be sound policy under *Cort v. Ash,* but would close a potentially vexing doctrinal lacuna in the structure of Section 36(b).

mutual fund from ever commencing such an action. However, in light of the *Burks v. Lasker* Court's refusal to find that the ICA as a whole is informed by a congressional presumption of directorial hostility, this Court cannot conclude that Section 36(b), in contradistinction to the rest of the ICA, should be read to rest on such a presumption. Section 36(b) specifically permits a federal court, in deciding whether the defendant investment adviser's fee was excessive, to give weight to the board of directors' approval of the amount of the fee. *See* 15 U.S.C. § 80a–35(b)(2) ("approval by the board of directors ... shall be given such consideration by the court as is deemed appropriate under all the circumstances"). If Congress, in enacting Section 36(b), assumed that a mutual fund's board of directors would inevitably oppose actions to recover advisory fees, and thus would automatically approve the amount of such fees, it would not have given the federal courts this leeway.[13] Since Section 36(b) thus is not informed by a presumption of directorial hostility, the Court cannot accept the *Boyko* rule insofar as it relies on the existence of such a presumption.

Judge Gagliardi also based his holding in *Boyko* on his conclusion that a necessary consequence of requiring a Rule 23.1 demand in Section 36(b) actions would be to allow a non-interested director majority of the board to vote to terminate such actions.[14] Noting that "a majority of the board of an investment company is rarely composed of 'interested persons,' " and that directorial hostility, if not presumptively inevitable, is at least a frequent occurrence, Judge Gagliardi warned that to require a Section 36(b) plaintiff to make a Rule 23.1 demand "would doubtless mandate the dismissal of most, if not all, derivative actions commenced under [Section] 36(b)." 68 F.R.D. at 696. Reasoning that Congress could not have intended such a result, Judge Gagliardi concluded that the only way to avoid it was to hold that, "where there is at least one affiliated or interested director on the board of a mutual fund, the futility of making a demand on the entire board in an action brought by a shareholder pursuant to Section 36(b) will be presumed." *Id.*[15]

Insofar as Judge Gagliardi's holding rested on his conclusion that a contrary rule would permit a non-interested director majority to terminate a Section 36(b) action, this Court must reject *Boyko's* holding on the authority of *Burks v. Lasker.* The *Burks v. Lasker* Court clearly agreed that Congress could not have intended the result feared by Judge Gagliardi. However, the Court solved this problem by concluding that Section 36(b) *itself* forbids Section 36(b) actions to be terminated by the mutu-

---

**13.** Indeed, the legislative history of Section 36(b) indicates quite clearly that Congress contemplated a significant role for a mutual fund's board of directors in this context. The Senate Report stated that Section 36(b)

> is not designed to ignore concepts developed by the courts as to the authority and responsibility of directors. Indeed, this section is designed to strengthen the ability of the unaffiliated directors to deal with these matters and to provide a means by which the Federal courts can effectively enforce the federally-created fiduciary duty with respect to management compensation. The section is not intended to shift the responsibility for managing an investment company in the best interest of its shareholders from the directors of such company to the judiciary.

S.Rep.No.184, *supra, reprinted in* [1970] U.S. Code Cong. & Adm.News at 4903.

**14.** Under the normal rule, a shareholder is without standing to maintain a derivative ac-

tion when a disinterested majority of the board of directors refuses to sue. 13 W. Fletcher, Cyclopedia of the Law of Private Corporations § 5951 (Rev.Perm.Ed.1980 & Supp.1980). Thus it is often said that it is within the power of such a block of directors to "terminate" or "cut off" a shareholder derivative action.

**15.** It is no doubt safe to assume, given the manner in which mutual funds are created, *see* S.Rep.No.184, *supra, reprinted in* [1970] U.S. Code Cong. & Adm.News at 4901, that any mutual fund will always have at least one interested person on its board of directors. Judge Tauro is thus clearly correct when he comments that "[t]he *Boyko* holding makes the demand requirement of Rule 23.1 an empty formality," *see Untermeyer v. Fidelity Daily Income Trust, supra,* 79 F.R.D. at 45, because under *Boyko* demand would inevitably be excused.

al fund's board of directors. 441 U.S. at 484, 99 S.Ct. at 1840. Since Section 36(b) actions are, by the very terms of Section 36(b), never terminable, Judge Gagliardi had no ground to conclude that such termination would be made possible by requiring a Section 36(b) plaintiff to make a Rule 23.1 demand.[16]

■ In short, the Court cannot agree with either of the conclusions upon which Judge Gagliardi rested his holding in *Boyko*, and accordingly cannot follow that holding here. Instead, the Court endorses the general rule, as adapted to the Section 36(b) context by *Untermeyer*, that a Rule 23.1 demand will be excused only when fifty percent or more of the mutual fund's directors are "interested persons" within the meaning of section 2(a)(19) of the ICA. In the instant case, then, the fact that four of the Fund's directors are interested persons affords Markowitz no excuse for failing to make a Rule 23.1 demand because these four directors constitute less than fifty percent of the Fund's directors.

### 3. Non-Terminability of Section 36(b) Actions

Whereas the second excuse proffered by Markowitz fails primarily because of the Supreme Court's holding in *Burks v. Lask-*

*er*, the third excuse put forth by Markowitz is expressly founded on that case, specifically, on the Supreme Court's above-noted statement that a Section 36(b) action may never be terminated by the mutual fund's board of directors. Since a Section 36(b) action is non-terminable, reasons Markowitz, a Rule 23.1 demand cannot serve as a predicate for director termination of, and thus serves no purpose whatsoever in, a Section 36(b) case. Markowitz concludes that, because a Rule 23.1 demand would have served no purpose in this case, he should be excused from his failure to make such a demand.

■ The Court cannot accept Markowitz's reasoning, and must reject this excuse along with the others. It is true that the courts will not require a plaintiff to make a demand on the board of directors when to do so would force the plaintiff to undertake a purely ritualistic act. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1831, at 378 (1972). However, the Court is not persuaded, simply because the directors of the mutual fund are precluded from responding to a Rule 23.1 demand by terminating the plaintiff's action, that to require a Section 36(b) plaintiff to make such a demand is to insist on the performance of a purposeless or ritualistic act.[17]

**16.** The fact that the mutual fund's board of directors will frequently, though not inevitably, oppose a Section 36(b) action is, by itself, insufficient to justify creation of an exception to the general rule that a Rule 23.1 demand must be made. It should be remembered that making a Rule 23.1 demand is by no means an onerous task. Thus, "[f]orcing a shareholder to exhaust intracorporate remedies by mailing a copy of the complaint to the directors of the [mutual] fund before bringing a derivative action would hardly seem to frustrate the policies embodied in § 36(b)," even though the shareholder's efforts may often prove futile. Comment, *supra*, 44 U.Ch.L.Rev. at 117 n.64.

Moreover, even if, as one court has recently held, *see Grossman v. Johnson; supra*, note 11, 89 F.R.D. at 662–65, Section 36(b) actions could be terminated by a vote of the mutual fund's disinterested directors, this Court would still be unable to accept Judge Gagliardi's second rationale for excusing the failure to make a demand in *Boyko*. If Congress, contrary to the dictum of the Supreme Court in *Burks v. Lasker,* intended to

make Section 36(b) actions terminable in this fashion, it would be a perverse subversion of congressional intent to hold that, precisely because of the specter of such termination, the demand that would operate as the predicate for termination need not be made. In this connection the Court notes that the legislative history of Section 36(b) does not mention any modification of the traditional exhaustion requirement, suggesting that none was intended. In sum, the Court finds no compelling reason in the Section 36(b) context to deviate from the general practice under Rule 23.1, and accordingly adopts the rule enunciated in *Untermeyer.*

**17.** Plainly, if, as Judge Tauro recently held in *Grossman v. Johnson; supra*, note 11, 89 F.R.D. at 662–65, the directors of a mutual fund are *not* precluded from responding to a Rule 23.1 demand by terminating the plaintiff's action, Markowitz's third putative excuse could be summarily rejected. In light of its conclusion that a Rule 23.1 demand serves a legitimate purpose regardless of whether the board can terminate

The Court thus does not believe that Markowitz should be excused, on this basis, from his failure to make a Rule 23.1 demand.

In the context of a "normal" shareholder's derivative suit, the derivative plaintiff's demand is followed by a decision by the board of directors either to act or not to act to remedy the wrong that the shareholder claims occurred. If the board decides to act, the shareholder is precluded from maintaining a derivative suit, because the directors will bring the suit in the name of the corporation. Note, *Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit*, 73 Harv.L.Rev. 746, 759 (1960). If the board declines to take the action requested, the shareholder is still left without standing to maintain a derivative action unless the board's refusal was wrongful for some reason. Comment, *supra*, 44 U.Chi.L.Rev. at 193. The Rule 23.1 demand thus normally serves two purposes: first, it gives the board of directors, the entity formally entrusted with managing the corporation and presumably best positioned to remedy a wrong to the corporation, first opportunity to obtain for the corporation the relief desired by the shareholder; second, it serves as a vehicle for determining whether the shareholder has standing to maintain a derivative action. *Heit v. Baird, supra*, 567 F.2d at 1162–63 n.6; *Brody v. Chemical Bank*, 517 F.2d 932, 934 (2d Cir. 1975).

If, in Section 36(b) cases, a Rule 23.1 demand would serve neither of these two purposes, the Court agrees that to require such a demand would indeed be to insist upon the performance of a ritualistic act.

It is clear enough that the second purpose noted above is not served by requiring a Rule 23.1 demand in a Section 36(b) case: the standing of a Section 36(b) shareholder plaintiff depends upon Section 36(b) itself, and never upon the manner in which the mutual fund's board responds to the shareholder's demand. *Burks v. Lasker, supra*, 441 U.S. at 484, 99 S.Ct. at 1840. The question for the Court is thus whether in a Section 36(b) case it is sensible to give the mutual fund's board first opportunity to remedy the wrong to the mutual fund.

Markowitz argues that Section 36(b) does not permit a mutual fund itself to sue to recover excessive fees paid to its investment adviser. He accordingly concludes that no reason exists to give the mutual fund's board an opportunity to remedy the wrong to the mutual fund, because the mutual fund has no power to maintain a legal action to gain the relief sought. Even assuming that the mutual fund itself has no right of action under Section 36(b),[18] Markowitz's reasoning must be rejected because it takes too narrow a view of the remedial action contemplated by Rule 23.1. It has been held that "[u]nderlying Rule 23.1 is the notion that requiring exhaustion of intracorporate remedies will foster amicable resolution of differences." *Lerman v. ITB Management Corp.*, 58 F.R.D. 153, 157–58 (D.Mass.1973). *See also Weiss v. Sunasco Inc.*, 316 F.Supp. 1197, 1206 (E.D.Pa.1970); Comment, *supra*, 44 U.Chi.L.Rev. at 173. In the Section 36(b) context, the mutual fund might, by informal negotiation with its investment adviser, be able to convince the investment adviser to return to the

---

Section 36(b) actions, the Court is not required to adopt Judge Tauro's holding in *Grossman* in order to conclude that Markowitz's third excuse is inadequate.

**18.** The Court has already expressed its disagreement with this view. See note 12 *supra*. The Court's conclusion that a mutual fund is entitled to maintain its own action under Section 36(b), if correct, only lends further support to its holding that a Rule 23.1 demand should be required in Section 36(b) cases. If the board has this additional remedial tool available to it, there is all the more reason to afford the board

an opportunity to take remedial action by requiring a Rule 23.1 demand. The foregoing is not to suggest that the Court believes that the board could deny a shareholder standing to sue under Section 36(b) by commencing its own Section 36(b) action. *Burks v. Lasker* eliminates any such possibility. All the Court means to suggest is that the board of a mutual fund has its own legal remedies in excessive fee situations, meaning that it is appropriate to require a Rule 23.1 demand in order to give the board an opportunity to avail itself of those remedies.

mutual fund the excessive portion of its fee, thus obtaining the relief sought by the stockholder without making a federal case out of the issue. By requiring a Rule 23.1 demand in a Section 36(b) case, a court gives the mutual fund the opportunity to engage in such informal negotiation before any litigation has been commenced, and thus unquestionably serves one of the purposes of a Rule 23.1 demand. In no sense can it justifiably be said, then, that a court is insisting upon the performance of a ritualistic act under these circumstances. Accordingly, the Court declines to accept Markowitz's third excuse for failing to make a Rule 23.1 demand. His complaint must thus be dismissed for failure to plead either a demand or an adequate excuse, as required by Rule 23.1, unless Shearson and Bernstein are without standing to raise this objection.

### C

Markowitz contends that, even assuming his complaint is defective under the "demand or excuse" requirement of Rule 23.1, dismissal of the complaint is not proper here because the moving defendants, Shearson and Bernstein, are without standing to raise the demand or excuse requirement as a ground for dismissal. In Markowitz's view, such an objection can be raised only by the derivative corporation. The Fund, the derivative corporation in the instant case, answered Markowitz's complaint by "submit[ting] its rights and interests to the protection of the Court," and hence has not joined in the motion to dismiss presently before the Court.

 The Court, having given the parties' competing arguments careful consideration, concludes that defendants have the stronger position and that Shearson and Bernstein do have standing to raise the demand or excuse requirement as a ground for dismissal of this action. The parties have cited no cases, and the Court has by its own research failed to locate a decision, discussing the standing of defendants other than the derivative corporation to complain of the shareholder plaintiff's failure to make a Rule 23.1 demand. The Court adopts the general principle that "only the part[ies] for whose benefit a defense [to a shareholder derivative action] is intended should be permitted to raise the defense." *See* Note, *Defenses in Shareholders' Derivative Suits—Who May Raise Them,* 66 Harv. L.Rev. 342, 346 (1952).[19] Among the purposes that support the Rule 23.1 demand or excuse requirement is a concern to afford corporate directors reasonable protection from harassment by litigious dissident shareholders, and thus to discourage strike suits by shareholders making reckless charges for personal gain rather than corporate benefit. *Barr v. Wackman,* 36 N.Y.2d 371, 378, 368 N.Y.S.2d 497, 505, 329 N.E.2d 180, 186 (1975); Annot., 48 A.L.R.3d 595, 606–07 (1973). Consequently, the defense of failure to plead demand or excuse is generally intended to benefit not only the derivative corporation, but persons standing in a fiduciary relationship to the derivative corporation. Accordingly, the general rule under Rule 23.1 should permit fiduciaries of a derivative corporation, but not strangers, to complain of the plaintiff's failure to make a demand. *See Lazar v. Merchants' National Properties, Inc.,* 45 Misc.2d 235, 236–37, 256 N.Y.S.2d 514, 517 (Sup.Ct.N.Y. County 1964), *aff'd,* 23 A.D.2d 630, 256 N.Y. S.2d 542 (*Mem.* 1st Dep't 1965) (stating similar rule under New York law). *But cf. Ripley v. International Railways of Central America,* 8 A.D.2d 310, 317, 188 N.Y.S.2d 62,

---

**19.** The general principle would not apply, of course, where the particular Rule 23.1 defense is primarily informed by considerations of public policy rather than by a desire to benefit potential derivative action defendants; in such a case, any defendant should have standing to raise the defense. An example would be the contemporaneous ownership requirement discussed *supra,* which exists not to benefit any particular class of Rule 23.1 defendants, but rather to prevent the creation of a market in shareholder derivative actions. The Rule 23.1 demand or excuse requirement, while it may have the incidental salutary consequence of terminating a certain number of shareholder derivative actions before they find their way into federal court, is principally based on considerations related to the interests of the derivative corporation, and not those of the public generally.

72 (1st Dep't 1959), *aff'd*, 8 N.Y.2d 430, 209 N.Y.S.2d 289, 171 N.E.2d 443 (1960) (describing right of corporate fiduciary to raise defense of failure to plead demand or excuse as "questionable").

The question before the Court, then, is whether or not this general rule should be carried over to the Section 36(b) context. The answer depends on whether, in Section 36(b) cases, the requirement of a Rule 23.1 demand may fairly be said to serve the purpose of protecting a mutual fund's investment advisers from harassment by litigious dissident shareholders of the mutual fund. Analysis of this problem is greatly advanced by observing that our concern here is only with cases where the claims against the investment adviser are nonmeritorious; the Rule 23.1 demand requirement is not designed to shield fiduciaries of the derivative corporation from being required to defend against *valid* claims. The Court's analysis thus is not assisted by the conclusion previously reached herein that meritorious Section 36(b) claims will tend to be settled before the commencement of litigation as a result of requiring a Rule 23.1 demand in Section 36(b) cases. The important question is whether nonmeritorious, particularly frivolous, Section 36(b) actions are more likely to be disposed of in favor of the innocent investment advisers as a result of requiring a Rule 23.1 demand.

■ Normally, of course, the Rule 23.1 demand requirement unquestionably aids in the disposition of a frivolous derivative action, because the demand sets the stage for the board of directors to terminate the action by rejecting the demand. Section 36(b) actions, however, may not be terminated in this fashion. In *Burks v. Lasker, supra*, the Supreme Court stated that, "when Congress [intended] to prevent board action from cutting off derivative suits, it said so expressly. Section 36(b) . . . performs precisely this function for derivative suits charging breach of fiduciary duty with respect to adviser's fees." 441 U.S. at 484, 99 S.Ct. at 1840. While this statement is formally dictum, since the power to terminate under Section 36(b) was not at issue in *Burks v.*

*Lasker*, it is dictum of the most compelling sort: the Supreme Court based its "holding" that the ICA as a whole is not informed by an *implicit* congressional intention to prevent board termination of derivative actions precisely on this "dictum" that Congress had, in Section 36(b), *expressly* forbidden such termination. Although this Court recognizes that a powerful argument can be made for a contrary reading of Section 36(b), *see Grossman v. Johnson, supra*, note 11, 89 F.R.D. at 662–65, it does not believe that it may properly disregard so clear a statement by the Supreme Court, even if it is technically dictum. The Court accordingly holds that the board of directors of a mutual fund may not terminate a Section 36(b) action.

■ The non-terminability of Section 36(b) actions does not decide the instant issue, however. Courts, in judging whether the advisory fee challenged by a particular Section 36(b) action is excessive, are expressly authorized by Section 36(b) to give weight to an approval of the fee by the mutual fund's board of directors. 15 U.S.C. § 80a–35(b)(2). The board's rejection of a security holder's Rule 23.1 demand, while it cannot terminate a frivolous Section 36(b) action, nevertheless may be legally significant to the outcome of the action because the court may ultimately rely on the board's rejection of the claim to support its own refusal to grant any relief. In other words, the Rule 23.1 demand, when made in the Section 36(b) context, will frequently serve as a vehicle for the board to voice its approval of the amount of the challenged fee; such approval may well be influential in the ultimate disposition of a frivolous Section 36(b) action. On this basis, the Court concludes that the Rule 23.1 demand requirement does potentially serve to protect a mutual fund's investment advisers from harassment by litigious dissident security holders. In accordance with the principles stated above, then, the Court holds that the Rule 23.1 demand requirement, when applied in the Section 36(b) context, is intended to benefit not merely the defendant mutual fund, but its investment advisers as

well, meaning that the mutual fund's investment advisers have standing to raise the plaintiff's failure to plead a Rule 23.1 "demand or excuse" as a ground for dismissal of a Section 36(b) complaint.[20] The Court accordingly rejects Markowitz's argument that Shearson and Bernstein may not complain of Markowitz's failure to plead either a Rule 23.1 demand or an adequate excuse in his complaint.

## CONCLUSION

The motions presently before the Court are granted in their entirety, except that the motion filed in the Levy action, insofar as it seeks a protective order staying Levy's interrogatories and demand for document production, is denied as moot. The complaints filed in the Levy and Markowitz actions are hereby dismissed for failure to comply with the pleading requirements of Rule 23.1, Fed.R.Civ.P. Levy and Markowitz are granted leave to serve and file properly pleaded amended complaints within ninety (90) days of the date of this decision. This ninety-day period affords Markowitz and Levy a reasonable time to make the necessary Rule 23.1 demand, and gives the Fund's board of directors a reasonable period in which to decide what, if any, action it will take in response to that demand.

It is so ordered.

20. A word must be added regarding the prevailing practice under section 16(b) of the Securities Exchange Act of 1934. The Rule 23.1 demand or excuse requirement does not apply to Section 16(b) actions, because that section contains its own demand requirement, which permits a security holder to sue only "if the issuer shall fail or refuse to bring such suit within sixty days after request." 15 U.S.C. § 78p(b). Thus, a derivative action under Section 16(b), like one under Section 36(b), must be preceded by a demand on the board. Moreover, again in similar fashion to Section 36(b), the board's decision not to prosecute the suit does not preclude a subsequent Section 16(b) action by the security holder that made the demand. *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 276 n.22 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). An unbroken line of cases has held, on the theory that the Section 16(b) demand requirement is intended to benefit only the defendant derivative corporation, and not corporate insiders, that defendant corporate insiders have no standing to complain of a Section 16(b) plaintiff's failure to make a demand. *Prager v. Sylvestri*, 449 F.Supp. 425, 429 (S.D.

N.Y.1978); *Morales v. Mylan Laboratories*, 443 F.Supp. 778, 779 (W.D.Pa.1978); *Schur v. Salzman*, 365 F.Supp. 725, 732–33 & n.30 (S.D.N.Y.1973); *Blau v. Ogsbury*, [1952–56] Fed. Sec.L.Rep. (CCH) ¶ 90,635, at 91,931 (S.D.N.Y. 1953), *aff'd on other grounds*, 210 F.2d 426 (2d Cir. 1954); *Benisch v. Cameron, supra* note 5, 81 F.Supp. at 885; *Grossman v. Young*, 72 F.Supp. 375, 380 (S.D.N.Y.1947). *See also* 11A E. Gadsby, Business Organizations: Federal Securities Exchange Act of 1934 § 8.02[1][g][ii], at 8–61 (1980); 2 L. Loss, Securities Regulation 1047 (1961). Given the similarity between the general principles governing the demand requirements applicable to Section 16(b) and Section 36(b), this line of cases would provide powerful support for a contrary holding to that reached here regarding standing in the Section 36(b) context, but for the fact that Section 36(b), unlike Section 16(b), permits a court to give weight to board approval of the challenged conduct in determining the validity of that conduct. This aspect of Section 36(b), which forms the basis for the Court's holding on the standing issue, is sufficient to distinguish Section 16(b) and render the above-noted line of cases inapposite.