**Martin FOX, Plaintiff,**

v.

**REICH & TANG, INC. and Daily Income Fund, Inc., Defendants.**

**No. 81 Civ. 2602 (KTD).**

United States District Court,
S. D. New York.

March 29, 1982.

Milberg, Weiss, Bershad & Specthrie, New York City, for plaintiff; Richard M. Meyer, New York City, of counsel.

Seward & Kissel, New York City, for defendant Reich & Tang, Inc.; Anthony R. Mansfield, New York City, of counsel.

Pollack & Kaminsky, New York City, for defendant Daily Income Fund, Inc.; Daniel A. Pollack, Edward T. McDermott, Frederick P. Schaffer, New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Martin Fox, a shareholder of Daily Income Fund, Inc. ("Fund"), sued the Fund, a money market investment company, and Reich & Tang, Inc. ("R&T"), the investment adviser to the Fund, to recover allegedly excessive advisory fees paid by the Fund to R&T. Plaintiff's derivative suit is premised on Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–35(b), which places a fiduciary duty on an investment adviser with respect to compensation for services.[1] R&T is alleged to have breached that duty.

Defendants move to dismiss plaintiff's complaint for failing to plead that a demand was made on the Fund's board of directors prior to the filing of its complaint. Federal Rule of Civil Procedure 23.1 expressly states that a derivative suit complaint:

> shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority ... and the reasons for his failure to obtain the action or for not making the effort.

Plaintiff concedes that no demand was made and suggests that Section 36(b) does not require such a demand.

The issues presented to this Court are two-fold: one, whether a demand is required in a Section 36(b) action and, two, if a demand is mandated, whether plaintiff is excused from the strictures of Fed.R.Civ.P. 23.1. The answers to these questions have apparently resulted in a split within this district. Judge Ward recently held in *Markowitz v. Brody, et al.*, 90 F.R.D. 542 (S.D. N.Y.1981) that Section 36(b) does not obviate the need for a Rule 23.1 demand. In direct contrast, Judge Lasker states in dictum that "a demand on the directors of the Fund was not intended to be a prerequisite to suit under § 36(b)." *Blatt v. Dean Witter Reynolds Intercapital Inc., et al.*, 528 F.Supp. 1152, 1155 (S.D.N.Y.1981). Plaintiff argues that the *Blatt* decision should control this case for the following reasons: (1) the board of directors inability to terminate a Section 36(b) action renders any demand futile; (2) the legislative history supports plaintiff's contentions; and (3) a suit maintained under Section 16(b), an analogous section, need not comply with Rule 23.1. I do not find any of these arguments to be persuasive.

## DISCUSSION

Before I begin to address plaintiff's three arguments, I must start my discussion of the question presented neither with the particular section of the Investment Company Act in issue nor with the Federal Rules of Civil Procedure, but with the overall congressional intent behind the Investment Company Act and its requirement

---

1. 15 U.S.C. § 80a–35(b) provides in relevant part:

   (b) For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:

   \* \* \* \* \* \*

   (2) In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.

that there be "unaffiliated" persons on the board of directors of investment companies. Clearly in mandating this type of membership on the decision making board of an investment company, Congress recognized the need for protection of investors from unscrupulous investment advisors who might be in a position to mulct the public investor. The advisor to an investment company is entrusted with enormous amounts of money collected from the public shareholders and also with the day-to-day management of those funds. S.Rep.No.184, 91st Cong., 1st Sess. (1969) *reprinted in* [1970] U.S.Code Cong. & Admin.News, 4897, 4903, 4910. The temptation for self dealing whether through inflated fees or other nefarious schemes is self-evident.

It was to inhibit such self dealing that Congress insisted that directors unaffiliated with either the investment advisor or the Fund's principal underwriter constitute forty percent of the board of an investment company. 15 U.S.C. § 80a–10. "Since the adviser and underwriter are usually the same or related entities, a majority of the directors of most funds [including the Daily Income Fund] are unaffiliated with their managers." S.Rep.No.184, 91st Cong., 1st Sess. (1969) *reprinted in* [1970] U.S.Code Cong. & Admin.News at p. 4901. Thus, under the statutory mandate the board of directors of an investment company is to be the first line of defense for the individual investor against any self dealing onto which an advisor might be tempted. *Fogel v. Chesnutt,* 668 F.2d 100 at 104 (2d Cir. 1981); *Moses v. Burgin,* 445 F.2d 369, 376 (1st Cir.), *cert. denied,* 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971).

To require that an individual shareholder must first bring a problem to the board of an investment company therefore is not unreasonable. The unaffiliated directors can easily solve the problem (if it be real) without the need for litigation and its concomitant expense to the investment company. Thus, absent extraordinary circumstances, a

Rule 23.1 demand is a *sine qua non* in this type of litigation. To hold otherwise is to rule that the congressional enactment of the Investment Company Act is, in the main, ineffective, and the arguments advanced by plaintiff do not lead to such an anomalous result.

### 1. Termination of a Section 36(b) Suit

Mr. Fox correctly states that a Section 36(b) suit cannot be terminated by the Fund's board of directors. *Burks v. Lasker,* 441 U.S. 471, 484, 99 S.Ct. 1831, 1840, 60 L.Ed.2d 404 (1979); *Markowitz, supra,* 90 F.R.D. at 559. However, it does not logically follow that this safeguard obliterates any need for compliance with Rule 23.1. Even assuming, as plaintiff suggests, that the Fund's board of directors, which consists of three disinterested and two interested members, are hostile to his claim, this is not adequate justification for abandonment of the Federal Rules of Civil Procedure. The underlying basis for imposing the demand requirement on a derivative suit plaintiff extends beyond providing an opportunity for director termination. Directors should be given an opportunity to redress an aggrieved plaintiff without resort to litigation, *Untermeyer v. Fidelity Daily Income Trust, et al.,* 79 F.R.D. 36, 42 (D.Mass.1978), or to institute a private right of action themselves.[2] Acceptance of plaintiff's argument would foreclose any opportunity for prelitigation director involvement and as such is untenable.

### 2. Legislative History

Mr. Fox's bare contention that a demand on the Fund director's in a Section 36(b) suit is futile and consequently unnecessary and unreasonable, is not sufficient reason to ignore Rule 23.1. A "statute should be so construed as to harmonize with the Federal Rules if that is at all feasible." 7 Moore's *Federal Practice* ¶ 86.04[4] at 4966. Section 36(b) silence on the necessity of demand on the directors assumes compliance with Rule

---

**2.** It is unsettled whether or not the directors are empowered to maintain a private right of action. *Fogel v. Chesnutt,* 668 F.2d 100, 112,

(2d Cir. 1981); *Markowitz, supra,* 90 F.R.D. at 557 n.12; *Untermeyer, supra,* 79 F.R.D. at 46 n.30.

23.1. The Federal Rules may, however, be superseded by congressional enactments that "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072.

> [I]t is plain to the Court that a security holder's right to sue under Section 36(b) would in no way be modified or abridged within the meaning of 28 U.S.C. § 2072 simply by requiring compliance with Rule 23.1 .... Section 2072 is not triggered by an instance where application of the federal rules would be unreasonable, but only in a case where the rules directly conflict with substantive rights. No such conflict exists here.

*Markowitz, supra*, 90 F.R.D. at 555.

The legislative history provides scant basis for concluding that statutory disharmony exists with the traditional demand requirement. Plaintiff cites passages from a Senate Committee Report expressing guarded concern for the directors' ability to "secure changes in the level of advisory fee rates in the mutual fund industry." H.R. Rep.No.2337, 89th Cong., 2d Sess. (1966) at 131. Congress's proper concern with the issue of investment adviser compensation does not raise the presumption that Congress intended to abrogate Rule 23.1 nor has plaintiff presented this Court with any language supporting such a presumption.

In 1970, Section 36(b) was added to the Investment Company Act to "specify that the adviser has a fiduciary duty with respect to compensation for services of other payments paid by the fund ... to the adviser." S.Rep.No.184, 91st Cong., 1st Sess. (1969), *reprinted in* [1970] U.S.Code Cong. & Admin.News at 4902. The enactment of Section 36(b),

> is not designed to ignore concepts developed by the courts as to the authority and responsibility of directors. Indeed, this section is designed to strengthen the ability of the unaffiliated directors to deal with these matters and to provide a means by which the Federal courts can effectively enforce the federally-created fiduciary duty with respect to management compensation. The section is not intended to shift the responsibility for managing an investment company in the best interests of its shareholders from the directors of such company to the judiciary.

*Id.* at 4903. This legislative history supports defendants' position that the congressional motivation behind Section 36(b) was to combine forces between the unaffiliated directors and the Federal courts to adequately and equitably supervise the amount of advisory fees. Plaintiff's inference that this supervision can only occur at the sacrifice of Rule 23.1 is unreasonable and unwarranted. It would indeed be inconsistent with the expressed motives of the 1970 Amendments "to have been willing to rely largely upon 'watchdogs' [unaffiliated directors] to protect shareholder interests and yet, where the 'watchdogs' have done precisely that, require that they be totally muzzled." *Burks, supra*, 441 U.S. at 485, 99 S.Ct. at 1840.

Judge Lasker's decision in *Blatt* ignored the congressional imperative for independent management of money market funds and mistakenly presumed, in reliance on *Boyko v. Reserve Fund, Inc.*, 68 F.R.D. 692 (S.D.N.Y.1975) (LPG), that the directors of an investment company are uniformly antagonistic to "an action against the Fund's advisors for breach of fiduciary duty with respect to the receipt of compensation." *Id.* at 696. Section 10 of the Investment Company Act which mandates that directors unaffiliated with both the investment advisor and the fund's principal underwriter comprise forty percent of an investment company's board of directors, refutes on its face the presumption of hostility found in both the *Blatt* and *Boyko* decisions. Unless plaintiff is prepared to contest the true "disinterest" of each unaffiliated director, these independent board members will continue to examine with a discerning eye, as Congress intended, the payments of advisory fees. Without diligent observation of Rule 23.1 these directors will be denied an opportunity to fulfill the congressional mandate.

The importance of director involvement in the instant case is underscored in Section

36(b)(2), which provides that director approval of any advisory fees "shall be given such consideration by the court as is deemed appropriate under all the circumstances." 15 U.S.C. § 80a–35(b)(2). This provision permits the court to scrutinize the directors judgment in approving adviser compensation and to evaluate whether the "deliberations of the directors were a matter of substance or a mere formality." S.Rep.No.184, 91st Cong., 1st Sess. (1969) *reprinted in* [1970] U.S.Code Cong. & Admin.News at 4910. Rule 23.1, which fosters director input, is crucial to the court's determination and despite plaintiff's arguments, it will not be ignored.

### 3. *Section 16(b )*

Plaintiff's final argument rests on an ill conceived analogy between Section 16(b) [3] of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), and Section 36(b). Plaintiff cites cases for the proposition that Rule 23.1 does not apply to Section 16(b) cases, *Dottenheim v. Murchison*, 227 F.2d 737 (5th Cir. 1955), *cert. denied*, 351 U.S. 919, 76 S.Ct. 712, 100 L.Ed. 1451 (1957); *Blau v. Mission Corp.*, 212 F.2d 77 (2d Cir.), *cert. denied*, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954). However, these cases dealt with the contemporaneous ownership requirement of Rule 23.1 and not the demand clause at issue here. Thus, plaintiff's reliance on this case law is misplaced. This crucial distinction destroys plaintiff's suggested analogy between Section 16(b) and Section 36(b).

I am convinced that Rule 23.1 and Section 36(b) can and should co-exist compatibly. Plaintiff's arguments do not persuade me otherwise. Plaintiff's failure to make a Rule 23.1 demand on the fund directors is grounds for dismissal of the complaint unless Mr. Fox's failure to make such a demand may be excused by some extraordinary circumstances.

■ Plaintiff's complaint states at paragraph 14:

No demand has been made by the plaintiff upon the Fund or its directors to institute or prosecute this action for the reason that no such demand is required under § 36(b) of the Act. Moreover, all of the directors are beholden to R&T for their positions and have participated in the wrongs complained of in this action. Their initiation of an action like the instant one would place the prosecution of this action in the hands of persons hostile to its success.

This averment, besides being inconsistent with plaintiff's argument that the directors cannot maintain their own action, presents no adequate grounds for disobedience with Rule 23.1. The contention that all the Fund directors are involved in the wrongdoing and necessarily hostile to plaintiff's claim is unfounded. First of all, this presumption is contrary to the congressional entrustment of surveillance responsibilities to the unaffiliated directors discussed *supra*. *Burks, supra*, 441 U.S. at 486, 99 S.Ct. at 1841. Secondly, plaintiff's only proof of the potential hostility of the Fund directors to the instant case is found in the Fund's proxy statement dated September 4, 1981. This statement, issued four months after plaintiff filed his complaint discusses the instant litigation: "The Manager and the Corporation believe that the advisory fees paid by the Corporation have not been and are not excessive, and the Manager and the Corporation intend to deny and contest the material allegations of the complaint." at p. 10. This post-complaint hindsight cannot excuse Mr. Fox's failure to make a demand on the directors before filing his complaint.

■ Plaintiff has presented no justification for his noncompliance with Rule 23.1. Plaintiff alternatively requests that if this Court rules unfavorably, leave be granted to file an amended complaint. The rule in this Circuit is that leave to file amended complaints is usually freely granted absent prejudice to the parties. *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d

---

**3.** "Section 16(b) authorizes actions on behalf of a corporation to recover short-swing profits realized by corporate insiders as a result of their purchases and sales of the corporation's equity securities." *Markowitz, supra*, 90 F.R.D. at 551.

843, 856 (2d Cir. 1981). In the instant case, prejudice to the directors would result from plaintiff's dilatory amendment. One of the purposes of Rule 23.1 is to allow the directors to respond to plaintiff's claim prior to the initiation of a lawsuit. Allowing plaintiff to now file an amended complaint would make a mockery of the demand requirement. *See Shlensky v. Dorsey,* 574 F.2d 131, 141 (3d Cir. 1978); *Weiss v. Temporary Investment Fund, Inc.,* 520 F.Supp. 1098 (D.C.Del.1981).

Thus, defendants' motion to dismiss is granted and plaintiff is denied leave to file an amended complaint.

SO ORDERED.