Irving GARTENBERG, et al., Plaintiffs,

v.

MERRILL LYNCH ASSET MANAGE-
MENT, INC., et al., Defendants.

No. 79 Civ. 3123.

United States District Court,
S. D. New York.

Sept. 4, 1981.

Pomerantz, Levy, Haudek & Block, New York City, by Stanley M. Grossman, Bruce G. Stumpf, Stephen P. Hoffman, New York City, for plaintiff Irving Gartenberg.

Silverman & Harnes, New York City, by Sidney B. Silverman, New York City, for plaintiff Simone Andre.

Rogers & Wells, New York City, by William P. Rogers, Stanley Godofsky, James N. Benedict, New York City, for Merrill Lynch Asset Management and Merrill Lynch Pierce Fenner & Smith, Inc.

Brown, Wood, Ivey, Mitchell & Petty, New York City, by James K. Manning, New York City, for Merrill Lynch Ready Assets Trust.

## DECISION

MILTON POLLACK, District Judge.

These cases are shareholders' derivative suits on behalf of Merrill Lynch Ready Assets Trust, alleging that its investment advisor, Merrill Lynch Asset Management, Inc., violated Section 36(b) of the Investment Company Act, 15 U.S.C. sec. 80a–35(b), which imposes a fiduciary duty on investment advisors with respect to their compensation. The question presented is whether the suit should be dismissed because of the plaintiffs' failure to demand of their board of trustees that the Trust pursue a remedy in its own name.

Federal Rule of Civil Procedure 23.1, which governs shareholders' derivative actions in the federal courts, does not require that a demand on directors (or trustees, in this case) be made in every case. Rather, the rule requires that there be a demand or a proper excuse for the failure to demand.

Both Gartenberg and Andre failed to demand action by the board of trustees before their suits were commenced. Though Gartenberg's amended and supplemental complaint mentions no reason why he failed to file a demand with the trustees before filing suit, Andre's complaint states that demand was excused because the trustees could not initiate any action under Section 36(b), and that two of the eight trustees were interested in the defendant investment advisor. Andre Complaint, para. 13.

On July 14, 1981, more than two years after Gartenberg had filed suit, and four months after filing agreed and disputed proposed findings of fact and conclusions of law, Gartenberg's counsel formally demanded action from the trustees. The trustees rejected the demand on August 12, 1981, and elected not to pursue any claim against the investment advisor; it was the "judgment of the disinterested trustees . . . that the advisory agreements . . . were in accordance with the law and have served the best interests of the Trust."

Behind the demand or excuse requirement of Rule 23.1 lies the "notion that a shareholder's suit is to be resorted to as a last alternative, and that the corporation is given every possibility to sue in its own name." 3B J. Moore, *Moore's Federal Practice* para. 23.1.19, at 23.1–82 (2d ed. 1980). See 7A C. Wright & A. Miller, *Federal Practice and Procedure* sec. 1831, at 374 (1972). It recognizes that it is ordinarily the job of the directors to govern the corporation. *Delaware & Hudson Co. v. Albany & Susquehana R. R. Co.*, 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862 (1909); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257 (1st Cir. 1973), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). *See* Note, *The Demand and Standing Requirements in Stockholder Derivative Actions*, 44 U.Chi.L. Rev. 168, 171 (1976). It is also the job of the directors to consider whether there was performance of fiduciary duty before a stockholder may plunge the fund into litigation on this question.

In this case, plaintiffs filed a demand on the trustees more than two years after filing their complaints. Several recent cases in the Third Circuit have held that a late demand is insufficient to satisfy the requirements of Rule 23.1. *See Cramer v. General Tel. & Elec. Corp.*, 582 F.2d 259, 276 (3d Cir. 1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979). ("the futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight."); *Shlensky v. Dorsey*, 572 F.2d 131, 142 (3d Cir. 1978); *Weiss v. Temporary Investment Fund, Inc.*, 516 F.Supp. 665 at 673 (D.Del. 1981). Other cases in this Circuit, however, have allowed plaintiffs to make a later demand and file an amended complaint. See *Markowitz v. Brody*, 90 F.R.D. 542 (D.C.N.Y.1981); *Siegal v. Merrick*, 84 F.R.D. 106, 110 (S.D.N.Y.1979). *See also de Haas v. Empire Petroleum Co.*, 435 F.2d 1223, 1228 (10th Cir. 1970) ("Courts have generally been lenient in excusing demand.")

Andre's first reason for failing to demand is that the trustees could not have instituted suit themselves under Section 36(b), so it would have been useless to demand that they do so. The argument is beside the point since the trustees could still take action to ameliorate the controversy, such as themselves renegotiating the advisory contract that gave rise to plaintiffs' complaint. *See Markowitz v. Brody*, 90 F.R.D. 542 (1981 Transfer Binder) Fed.Sec. L.Rep. (CCH) para. 98,002, at 91, 173 (S.D. N.Y.1981).

Andre's second argument is that two of the eight trustees are interested in the defendant investment advisor. Andre's argument is supported by the one court that has held that a demand on the directors will be presumed futile if there is at least one interested director on the board when the case, like this one, involves a suit under Section 36(b) for excessive compensation to an investment advisor, *Boyko v. Reserve Fund, Inc.*, 68 F.R.D. 692, 696 (S.D.N.Y. 1975).

More recently, however, courts have scrutinized much more closely plaintiffs' reasons for failure to demand. *See, e. g., Cramer v. General Tel. & Elec. Corp.*, 582 F.2d 259, 276 (3d Cir. 1978), *cert. denied*, 489 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979) (demand would not be futile even though 4 out of 14 directors were interested). Indeed, two of the cases that allowed plaintiffs to make an amendment to include the allegation of a demand made after the filing of the complaint suggest that the mere allegation that two of the eight directors are interested is not a justification for failing to demand. *See Markowitz v.*

*Brody*, 90 F.R.D. 542 (1981 Transfer Binder) Fed.Sec.L.Rep. (CCH) para. 98,002 (S.D. N.Y. May 20, 1981), at 91,172 ("a Rule 23.1 demand will be excused only when fifty percent or more of the mutual fund's directors are 'interested persons' within the meaning of section 2(a)(19) of the ICA."); *Siegal v. Merrick*, 84 F.R.D. 106, 110 (S.D.N. Y.1979) (Motley, J.) ("the presence, or even control of, the board by interested directors does not necessarily render a demand futile.") In this case, there is no allegation that the rest of the trustees are controlled by the two interested trustees. Counsel for Gartenberg has submitted a proposed second, so called, amended complaint, but in reality, a new supplemental complaint which does make such allegations, but has not yet been given permission to amend. Absent such allegations, there was no reason to suspect that the outcome of a demand on a board, three quarters of which is composed of disinterested, independent trustees, would have been unavailing.

█ Though Andre's reasons fall short of the mark, the fact that in certain circumstances demand may be excused suggests that demand may also be waived by the trustees. In this case, plaintiff's demand of July 14, 1981, two years after the commencement of the suit and four months after the proposed findings and conclusions were filed, was not rejected for untimeliness only, but was refused on the assertion of the judgment of the disinterested trustees on the merits. Consequently, it must be determined by an evidentiary hearing whether that judgment so reached was validly arrived at and whether the facts insulate the advisor from liability and dispose of the suit by a stockholder.

It has been stipulated by the plaintiffs that the supplemental claim, if allowed to be filed, based on a post litigation demand and refusal thereof, is to be deemed filed and operative from the date of filing, September 4, 1981, and that the one year limitary period of damages on the 36(b) claims will be governed by and calculated back from the date of the assertion of the newly permitted claims.

█ The effect of allowing a plaintiff, after litigation has been commenced, to construct a sufficient complaint obviously relates to the operation of the short statute of limitations applicable in respect of computable damages. The new claim based upon the July 1981 demand would not relate back to the filing of the insufficient claim in 1979. To rule otherwise would be to expunge the necessity of demand for a valid claim and set Rule 23.1 of the Federal Rules of Civil Procedure at naught. That problem is now bypassed by the stipulation referred to above made by the plaintiffs in open court.

The absence of a demand was pressed specifically only after all pretrial proceedings were complete and a trial date fixed. It is true that the defendants pleaded the absence of demand and reasserted that absence in the proposed findings of fact and legal conclusions as a basis of dismissal of the suit. It is also a fact that the trustees went further and considered the belated, questioned, demand, and reached and announced a judgment on the merits of the claimed breach of fiduciary duty in the suit.

█ The previous action by the trustees in defense of the suit, termed by the plaintiffs as hostile action, was in a legitimate protection of their substantive defenses, and was not, therefore, indicative of any waiver of the absent demand before suit. The trustees went further after demand was made.

It, of course, goes without saying that nothing herein is to be considered as passing on the validity of the judgment of the trustees on the merits or on the viewpoint of the defendants on the absence of the demand and its implications on the suit. Those matters remain open for consideration on the basis of what the evidence will show concerning the validity of the judgment of the trustees. It also is unnecessary to point out, except for the sake of completeness, that the claims of plaintiffs may not pre-date their stock ownership.

█ Accordingly, the motion made returnable today by the plaintiffs for leave to

**528**

serve a supplemental complaint denominated by them second amended, but consisting of a new claim because an essential, previously nonexistent element has now come into existence and been added, will be and hereby is granted in the Court's discretion on a stipulation referred to above that the limitary period shall date from and be governed by the date of the filing of the said supplemental claim. However, it is too late at this stage to accommodate plaintiffs' failure to sue Merrill Lynch and Co. Inc. in the place of Merrill Lynch Pierce Fenner & Smith, Inc. All proceedings herein during the past two years, including the formal findings of fact and conclusions of law presented by both parties to the Court many months ago, have named the latter as the defendant being sued, and it would be inappropriate to substitute a new party, however related that party may be, on the day before the trial commences.

The issues in this case will be heard at trial commencing on September 8, 1981, at 10:00 a. m., in this courtroom.

MR. MANNING: Your Honor, may we have our answer to the earlier complaint deemed the answer?

THE COURT: Is there any objection?

MR. GROSSMAN: No, your Honor.

THE COURT: Yes. Mutatis mutandis, meaning necessary changes being deemed to have been made.

THE COURT: An application has been made on behalf of the Bank of New York which has received a subpoena duces tecum issued out of the offices of the attorney for plaintiff Gartenberg. For good cause shown and after considering the nature of the request, the subpoena is vacated and set aside.