Fannie TARLOV, as Executrix of the Estate of Marjorie Landy, Plaintiff,

v.

PAINE WEBBER CASHFUND, INC.; Paine, Webber, Jackson & Curtis, Inc.; Provident Institutional Management Corporation; Donald B. Marron; John F. Curley, Jr.; George W. Gowen; Paul Kolton; and Thomas F. Murray, Defendants.

No. Civ. B 80–260(WWE).

United States District Court, D. Connecticut.

March 15, 1983.

Richard J. Stull, of Stull, Stull & Brody, and Daniel W. Krasner, of Wolf Haldenstein Adler Freeman & Herz, New York City, for plaintiff.

Richard M. Phillips, Cherif Sedky, Michael S. Miller, Jonathan Eisenberg, of Kirkpatrick, Lockhart, Hill, Christopher & Phillips, Washington, D.C., for defendants Paine, Webber, Jackson & Curtis, Inc., Donald B. Marron, and John F. Curley.

Peter M. Mattoon, Richard Z. Freeman, Jr., John B. Langel, George E. Moore, of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendant Provident Institutional Management Corp.

William J. Kennedy, Robert P. vom Eigen, Keith Vandivort, of Dechert Price & Rhoads, Washington, D.C., for defendants George W. Gowen, Paul Kolton, and Thomas F. Murray.

Meyer Eisenberg, Joseph Zuckerman, Marc Rowin, of Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendant Paine Webber Cashfund, Inc.

## RULING ON MOTIONS TO DISMISS

EGINTON, District Judge.

At the heart of this shareholder derivative suit is an allegation that a money market fund paid excessive fees to its investment advisers. The plaintiff seeks damages and injunctive relief for this alleged misfeasance under a spectrum of federal statutes and common law. The defendants have moved to dismiss the action. Magistrate Thomas P. Smith denied these motions, and his ruling is now before this court for review. For the reasons stated below, the magistrate's ruling is reversed in part and adopted in part.

This action was commenced by Mrs. Landy,[1] a shareholder in the defendant money market fund, on May 20, 1980, against the following defendants:

—Paine Webber CASHFUND, Inc. ("the Fund"), a no-load diversified, open-end investment company, commonly known as a money market fund;

—Paine, Webber, Jackson & Curtis, Inc. ("Paine Webber"), the organizer, sponsor, and underwriter of the Fund;

—Provident Institutional Management Corporation ("PIMC"), which at one time served as the Fund's investment adviser;

—Donald B. Marron and John Curley, Jr., directors of the Fund who are affiliated with Paine Webber ("the affiliated directors"); and

—George W. Gowen, Paul Kolton and Thomas F. Murray, who are also directors of the Fund but are not affiliated with Paine Webber ("the independent directors").

In late 1980, each of the defendants moved to dismiss the complaint on various grounds. Common to each motion was the argument that this action should be dismissed under Rule 23.1 of the Federal Rules of Civil Procedure because plaintiff did not make the required demand on the directors

---

1. Mrs. Landy died after this suit was instituted, and Fannie Tarlov, as executrix of the Landy estate, was substituted as plaintiff.

of the Fund before filing her suit.[2] Without reaching any of the defendants' other arguments, Magistrate Smith ruled on October 16, 1981, that the complaint should be dismissed for failure of the plaintiff to make demand on the directors or to allege with particularity the reasons for not doing so.

This court adopted the magistrate's ruling, but permitted the plaintiff to file an amended complaint, which she did on January 27, 1982. Because it is this amended complaint which is attacked here, its allegations are set forth below in some detail.

The principal claim is that the Fund has paid excessive compensation pursuant to its Administration, Advisory and Distribution Agreement ("Distribution Agreement") with defendant Paine Webber and pursuant to its Investment Advisory Contract ("Advisory Agreement") with defendant PIMC ("the Agreements"). Plaintiff alleges in Count I of the amended complaint that Paine Webber and PIMC have made excessive profits from the Agreements in violation of Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 through 80a–64 (hereinafter "the 1940 Act" or "the Act"), at § 80a–35(b).[3]

Count II alleges that the annual approval and renewal of the Agreements by all the defendants constitutes a breach of fiduciary duty in violation of the common law and of Sections 1(b)(2), 15(a), 15(b), 36(a) and 47 of the 1940 Act, 15 U.S.C. §§ 80a–1(b)(2), 15(a), 15(b), 35(a) and 46.

Count II also alleges that, by failing to disclose in the Fund's June 13, 1979, proxy statement the alleged fact that PIMC was receiving investment advisory fees without performing services for the Fund, all of the defendants violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ("the Exchange Act"), Rule 14(a)–9 adopted thereunder, 17 C.F.R. § 240.14(a)–9, and Section 20(a) of the 1940 Act, 15 U.S.C. § 80a–20(a).

The plaintiff alleges in Count III that it is unlawful under Sections 16 and 21 of the Banking Act of 1933, 12 U.S.C. §§ 24, 378(a) ("Glass-Steagal Act"), for PIMC, as the wholly-owned subsidiary of a national bank, to provide advisory services to an open-end fund.

Finally, Count IV realleges the receipt of excessive fees by Paine Webber in violation of Sections 1(b)(2), 15(b), 36(a) and 36(b) of the 1940 Act. It also alleges that Paine Webber has received compensation for its distribution services and that it is a violation of the 1940 Act for the Fund to bear such distribution expenses.

Paragraphs 40 through 42, which apply to all four counts, relate to plaintiff's failure to make a pre-suit demand on the Fund's directors. It is alleged, in a conclusory fashion, that demand would have been futile, and that, in any event, plaintiff made a post-suit demand in July, 1981, which was rejected by the directors in November, 1981.

For the reasons set forth below, Counts II and III must be dismissed for failure to state a claim upon which relief can be granted. The action will continue as to PIMC and Paine Webber only, and only under the allegations of Counts I and IV.

*I) Suit Under Section 36(b) of the 1940 Act.*

Interest in money market funds increased dramatically in the late 1960's. Because, as in this case, adviser fees are usually calculated as a percentage of a fund's assets, this sudden growth created a risk of unduly high compensation to investment advisers. Section 36(b)[4] was added to the 1940 Act in

---

**2.** Rule 23.1 provides, in relevant part:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation ..., the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

**3.** The text of each of the sections cited here is set forth later in this opinion.

**4.** Section 36(b) provides, in relevant part:

... the investment adviser of a registered investment company shall be deemed to have

1970 to permit recovery of excessive adviser compensation. *See* S.Rep. No. 184, 91st Cong., 1st Sess. 6 (1969), *reprinted in* 1970 U.S.Code Cong. & Ad.News 4897, at 4902 ("Senate Report").

The plaintiff seeks relief under Section 36(b) in the first count of her complaint against Paine Webber and PIMC. These defendants have argued that this count must be dismissed under Rule 23.1 of the Federal Rules of Civil Procedure.

The First and Third Circuits have held that compliance with Rule 23.1 is required in suits under Section 36(b). *Grossman v. Johnson,* 674 F.2d 115 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Weiss v. Temporary Investment Fund,* 692 F.2d 928 (3rd Cir.1982).

■ Adopting a different rule, the Second Circuit recently held in a case identical in all material respects to this one that demand is not required in actions seeking the return of excessive adviser fees under Section 36(b). *Fox v. Reich & Tang, Inc.,* 692 F.2d 250 (1982). In light of that decision, the magistrate properly denied defendants' motion to dismiss Count I.

■ PIMC and Paine Webber, realizing that their original argument is now moot and having no other challenge to plaintiff's Section 36(b) claim at this stage of the case, ask this court to stay any action under Section 36(b) in order to await a possible grant of *certiorari* by the Supreme Court and a possible reversal of the Second Circuit's position. The court will not stay proceedings in this action for such a speculative reason.

A stay would be particularly inappropriate here since a reversal of *Fox* would not necessarily require that this case be dismissed. Plaintiff has made demand on the directors, albeit after her original complaint was filed. A reversal of *Fox* might therefore impact only on the question of when the one-year period of limitation in Section 36(b)(3) should be held to have begun. If *Fox* stands, the instant suit covers fees paid from May, 1979, to the close of this action. If *Fox* is reversed, this court will have to decide whether that period should be held to start in January, 1981, a year before the amended complaint was filed pleading demand on the Fund's directors, or July, 1980, a year before the demand was made, or some other date suggested by the parties. In any event, there would be no obvious policy requiring dismissal of the action. *See, e.g., Gartenberg v. Merrill Lynch Asset Management, Inc.,* 91 F.R.D. 524, 527 (S.D. N.Y.1981), on the relation back of a post-complaint demand in a Section 36(b) suit.

The defendants are directed to comply expeditiously with discovery on Count I and the court will consider appropriate sanctions if the defendants are dilatory.

*II) Claims Under Sections 1(b)(2), 15(a), 15(b), 36(a) and 47 of the 1940 Act.*

Plaintiff seeks in Count II to proceed under Sections 1(b)(2), 15(a), 15(b), 36(a) and 47 of the 1940 Act. The defendants have moved to dismiss these claims for failure to comply with Rule 23.1 and because these sections do not provide for a private right of action.

*A) Failure to Comply With Rule 23.1.*

a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company ... An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, ... for breach of fiduciary duty in respect of such compensation ... With respect to any such action the following provisions shall apply:

\* \* \* \* \* \*

(3) No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted. Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

Plaintiff's original complaint was dismissed for failure to either allege demand on the Fund's directors or to state with particularity why it would have been futile to make such demand, as required by Rule 23.1. Plaintiff was permitted to file an amended complaint which, she was warned, would then be scrutinized for compliance with the rule. *See* Ruling on Objection to Magistrate's Ruling of January 6, 1982, at 2.

The only change from a proposed amended complaint which this court reviewed in its January 6, 1982, ruling and held to be insufficient is that the amended complaint as actually filed alleges that demand has since been made and refused. The amended complaint still fails to address this court's concern that the futility of an earlier demand be pleaded with particularity. The allegation in Paragraph 42(a)(3) of the

amended complaint, for example, that the directors were selected by Paine Webber and PIMC and are "beholden" to them for their offices hardly establishes domination and control. Futility of demand not having been shown, the court might have to reach the question whether plaintiff's post-complaint demand is sufficient under Rule 23.-1.[5]

However, because this court finds no express or implied right of action under the cited portions of the 1940 Act, it need not and does not decide here what effect to give to plaintiff's July, 1981, demand.

*B) Private Rights of Action Under Sections 1(b)(2), 15(a), 15(b), and 36(a) of the 1940 Act.*

Count II alleges violations of Sections 1(b)(2), 15(a), 15(b), and 36(a) of the 1940 Act.[6] Plaintiff contends that implied rights

---

**5.** *Compare Weiss v. Temporary Investment Fund, Inc.,* 516 F.Supp. 665, 670, *reargument denied* 520 F.Supp. 1098, 1100 (D.Del.1981), *affirmed* 692 F.2d 928 (3d Cir.1982), *petition for rehearing en banc denied* (Dec. 30, 1982); *Grossman v. Johnson,* 89 F.R.D. 656, 660–61 (D.Mass.1981), *affirmed* 674 F.2d 115 (1st Cir.), *cert. denied* —— U.S. ——, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Cramer v. G.T.E. Corp.,* 582 F.2d 259, 276 (3d Cir.1978), *cert. denied* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979); *Schlensky v. Dorsey,* 574 F.2d 131, 141 (3d Cir.1978); *In re Kaufman Mutual Fund Actions,* 479 F.2d 257, 263 (1st Cir.), *cert. denied* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 91 F.R.D. 524, 527 (S.D.N.Y. 1981) [cited by defendants as explicitly or impliedly rejecting post-complaint demands under Rule 23.1] *with Jerozal v. Cash Reserve Management, Inc.,* slip op. No. 81 Civ. 1569 (CES) (S.D.N.Y. Aug. 10, 1982); *Evangelist v. Fidelity Management Co.,* slip op. No. 81–536Z (D.Mass. July 20, 1981) (Zobel, J.); *Markowitz v. Brody,* 90 F.R.D. 542, 563 (S.D.N.Y.1981); *Siegal v. Merrick,* 84 F.R.D. 106, 110 (S.D.N.Y. 1979); *Brody v. Chemical Bank,* 482 F.2d 1111, 1114 (2d Cir.1973), *on remand* 66 F.R.D. 87, 90 (S.D.N.Y.1974) [cited by plaintiff as explicitly or impliedly permitting post-complaint demands]. *See also Galef v. Alexander,* 615 F.2d 51, 59 (2d Cir.1980) (noting in *dictum* that demand should be made before the complaint is filed); *deHaas v. Empire Petroleum Co.,* 435 F.2d 1223, 1228 (10th Cir.1970) ("Courts have generally been lenient in excusing demand.").

**6.** Her allegations under Section 47 of the Act are discussed below. The above sections provide, in relevant part:

§ 1(b)(2): Upon the basis of facts disclosed by the record and reports of the Securities and Exchange Commission made pursuant to . . . this title, and facts otherwise disclosed and ascertained, it is declared that the national public interest and the interest of investors are adversely affected—

\* \* \* \* \* \*

(2) when investment companies are organized, operated, managed, or their portfolio securities are selected, in the interest of directors, officers, investment advisers, depositors, or other affiliated persons thereof, in the interest of underwriters, brokers, or dealers, in the interest of special classes of their security holders, or in the interest of other investment companies or persons engaged in other lines of business, rather than in the interest of all classes of such companies' security holders; . . .

§ 15: (a) It shall be unlawful for any person to serve or act as investment adviser of a registered investment company, except pursuant to a written contract, which contract, whether with such registered company or with an investment adviser of such registered company, has been approved by the vote of a majority of the outstanding voting securities of such registered company, and—

(1) precisely describes all compensation to be paid thereunder;

\* \* \* \* \* \*

(b) It shall be unlawful for any principal underwriter for a registered open-end company to offer for sale, sell, or deliver after sale any security of which such company is the issuer, except pursuant to a written contract with such company, . . .

of action have been recognized under these sections, citing as authority *Brown v. Bullock,* 194 F.Supp. 207 (S.D.N.Y.), *affirmed* 294 F.2d 415 (2d Cir.1961); *Fogel v. Chestnutt,* 533 F.2d 731 (2d Cir.1975), *cert. denied* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976) ("Fogel I"); *Tannenbaum v. Zeller,* 552 F.2d 402 (2d Cir.), *cert. denied* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir. 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982) ("Fogel II").

This contention ignores the impact of the Supreme Court's most recent decisions on implied rights of action, especially in light of the 1970 Amendments to the Act. As Judge Goldberg stated in *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1088 (5th Cir.) (dissent), *cert. denied* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), "[o]nly a cave dweller or other layman would not realize that there has been a remarkable change of attitude by the Supreme Court regarding the inference of private rights in the last fifteen years." As evidence of the change, Judge Goldberg cited three recent Supreme Court opinions; *Transamerica Mortgage Advisors Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979) ("TAMA") ("While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, ... what must ultimately be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear."); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979)

("... in a series of cases since [*J.I. Case Co. v.*] *Borak* [377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)], we have adhered to a stricter standard for the implication of private causes of action..."); *Cannon v. University of Chicago,* 441 U.S. 677, 717, 99 S.Ct. 1946, 1968, 60 L.Ed.2d 560 (1979) (Rehnquist, J., concurring) ("... the approach of the court ... is quite different from the analysis in earlier cases...").

The task before this court, then, is to decide whether Congress intended to create private rights of action under Sections 1(b)(2), 15(a), 15(b), and 36(a) to correct the payment of excessive fees to an investment adviser. The basic analysis is that laid out in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975):

1) Does the statute create a federal right in favor of the plaintiff?

2) Is there any indication of legislative intent in the language or legislative history of the statute to create or deny such a right?

3) Is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

4) Is the area one which is traditionally a matter of state law, making it inappropriate to infer a cause of action based solely on federal law?

■ Later decisions have made it clear that, since the goal is to determine Congressional intent, the utility of a private remedy and the availability of state remedies are of importance only to the extent they shed light on that intent; they cannot be used to overcome a clear expression in the language

---

§ 36(a): The Commission is authorized to bring an action in the proper district court of the United States, ... alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person serves or acts—

(1) as officer, director, member of any advisory board, investment adviser, or depositor;

\*　\*　\*　\*　\*　\*

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a–1(b) of this title.

and focus of the statute, its legislative history, and its purpose, of an intent to provide no private right of action. *Touche Ross & Co. v. Redington, supra,* 442 U.S. at 575–76, 99 S.Ct. at 2488; *TAMA, supra,* 444 U.S. at 23–24, 100 S.Ct. at 249. Thus, the fact, conceded by all parties to this dispute, that the Act is intended to benefit shareholders such as the plaintiff, or that a private right of action might be desirable, does little to further this court's analysis of legislative intent.

Such an analysis begins, perforce, with the language of the Act. *TAMA, supra,* 444 U.S. at 16, 100 S.Ct. at 245. The obvious starting point in this action is Section 36(b). That section imposes upon the investment advisor of a registered investment company "a fiduciary duty with respect to the receipt of compensation for services," 15 U.S.C. § 80a–35(b), and creates a cause of action for breach of that duty.

■ Most importantly, however, Congress specifically limited this cause of action in Section 36(b)(3). Only the recipient of the allegedly excessive compensation can be sued. Damages may be awarded only for the period beginning one year prior to initiation of suit; only actual damages may be awarded and cannot exceed the amount of compensation received. The plaintiff, by attempting to proceed against all of the defendants to this action under Sections 1(b)(2), 15(a), 15(b) and 36(a) of the Act, is attempting improperly to avoid the express limits of Section 36(b)(3). Where Congress has provided so carefully for one method of enforcement, courts are not lightly to impute another method. *TAMA, supra,* 444 U.S. at 19, 100 S.Ct. at 246 (". . . where a statute expressly provides a particular remedy or remedies, a court must by chary of reading others into it."). *See also Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981); *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 419, 95 S.Ct. 1733, 1738, 44 L.Ed.2d 263 (1975); *National R.R. Passenger Corp. v. National Assoc. of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693,

38 L.Ed.2d 646 (1974). *Cf. Fox v. Reich & Tang, Inc., supra,* 692 F.2d at 255 (in holding that F.R.C.P. Rule 23.1 did not apply to Section 36(b) actions, the court noted that no implied right of action exists in the investment company; "[w]hen Congress has provided specific and elaborate enforcement provisions, . . . we will not lightly assume an unexpressed intention to create additional ones.").

■ Whatever the rule prior to enactment of Section 36(b), for this court now to imply a right of action to recover excessive adviser fees under these other sections of the Act would be squarely in conflict with Congress's carefully limited scheme of legislation in this area.

The plaintiff has not shown any clear indication of a contrary intent in the legislative history of the Act. Indeed, the limitations set forth in Section 36(b)(3) on any private right of action seem to have been an important factor in the creation of that right. The Senate Report noted the Committee's dissatisfaction with the then existing corporate waste standard of review. Senate Report, *supra,* at 4901–02. This standard was relaxed by Section 36(b) to permit the review for a breach of fiduciary duty. However, the restrictions set forth in Section 36(b)(3), discussed in the Senate Report, *id.* at 4911, seem to have been an integral part of the trade-off which gained the industry's support for more rigorous court review of advisor compensation. *Id.,* at 4898 (". . . amendments are supported by almost all segments of the securities industry.").

The cases cited by plaintiff are either no longer good law or are inapposite. In *Brown v. Bullock, supra,* 194 F.Supp. at 222–25, the district court concluded that a private right of action must be presumed unless a contrary intention is shown, and relied on cases which stressed the need to imply a remedy for the protection of the members of the class Congress meant to benefit by the statute. *See, e.g., A.C. Frost & Co. v. Coeur D'Alene Mines Corp.,* 312 U.S. 38, 43, 61 S.Ct. 414, 417, 85 L.Ed. 500 (1941), cited in *Brown, supra,* at 223. As

has been stated, this analysis has been repudiated. Even if it were otherwise applicable, the *Brown* case predates the enactment of Section 36(b) and so would not be controlling, as is shown by the other cases which plaintiff cites.

The other cases cited by plaintiff carefully and expressly distinguish themselves from the facts present in the instant case. For example, in *Tannenbaum, supra,* 552 F.2d at 417, after describing the creation by the 1970 Amendments of a private right of action to recover excessive compensation, the court held "Congress did not intend this modification to abrogate the private action already recognized under the Act for *other types* of breach of fiduciary duty." (Emphasis supplied.)

Similarly, in *Fogel II, supra,* the Second Circuit was asked to review its decision in *Fogel I, supra,* implying a cause of action under Section 36 against an adviser who failed to take certain actions to recapture brokerage commissions. The adviser argued that the Supreme Court's new and tougher standards for finding an implied right of action required reversal of the earlier ruling. At least under the rigorous "clear conviction of error" standard applicable there where the earlier ruling was law of the case, the court upheld the finding in *Fogel I* of an implied right of action. The court went on to state:

> We might agree with defendants that § 36(b), with the severe limitations of subsection (3), constitutes the exclusive remedy insofar as a private claim alleges solely [excessive adviser compensation].

668 F.2d at 112.

■ The conclusion is inescapable that, in an action seeking recovery of allegedly excessive fees paid to an adviser of a registered investment company after the effective date of Section 36(b), "no private remedies other than Section 36(b) seeking restitution of advisory fees shall be implied, brought or maintained and no other relief shall be granted against the recipient of the payments made. Section 36(b) affords the complete remedy intended by Congress." *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 528 F.Supp. 1038, 1067 (S.D.N.Y. 1981), *affirmed* 694 F.2d 923 (2d Cir.1982). In *Gartenberg,* Judge Pollack refused to imply a right of action under Sections 15(b), 15(c) or 20(a) of the Act. *See also Cohen v. Fund Asset Management Inc.,* [Current] Fed.Sec.L.Rep. ¶ 98,433, 92,569 at 92,571 (S.D.N.Y.1980) ("... since Section 36(b) already provides an express remedy for the recovery of excessive payments, the Court will not infer a cause of action under Section 15(c)."); *Halligan v. Standard & Poor's/Intercapital, Inc.,* 434 F.Supp. 1082, 1084 (E.D.N.Y.1977) ("Since § 36(b) affords a complete remedy for excessive fees paid to investment advisors, there is no need to imply a right of action under § 15(c).").[7]

The plaintiff's claims in Count II under Sections 1(b)(2), 15(a), 15(b) and 36(a) of the Act must therefore be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*C) Private Rights of Action Under Section 47 of the 1940 Act.*

Plaintiff's amended complaint also alleges in Count II an implied cause of action against all defendants, permitting the court to void the agreements under Section 47 of the Act, 15 U.S.C. § 80a–46. This section makes unenforceable a contract "made, or whose performance involves, a violation of" the Act, unless the court finds that enforcement would be more equitable than non-enforcement.[8] This claim of a Section 47 im-

---

**7.** *But see Jerozal v. Cash Reserve Management, Inc.,* slip op. No. 81 Civ. 1569(CES) (S.D.N.Y. Aug. 10, 1982) (Stewart, J.), denying motions to dismiss claims of excessive compensation brought under sections 15(a) and 15(b), as well as Section 36(b). Without explaining his reasoning, Judge Stewart held that the express remedy of Section 36(b) "added by a 1970 Congressional amendment, was not intended to abrogate causes of action for other breaches of fiduciary duty recognized at the time," citing *Tannenbaum v. Zeller, supra,* 552 F.2d at 417. Slip op. at 9–10. For the reasons given above, this court concludes that Congress did intend to abrogate such implied causes of action where excessive adviser fees are at issue.

**8.** Section 47 provides, in relevant part:

(b)(1) A contract that is made, or whose performance involves, a violation of this sub-

plied cause of action presents an issue slightly different from plaintiff's claim under the sections discussed above.

A plaintiff can seek relief under Section 47 only by showing a violation of some other section of the Act. As the preceding discussion has made clear, Section 36(b) is the only section of the Act authorizing a private right of action seeking to recover allegedly excessive advisor fees. The court accordingly dismissed plaintiff's claim of implied rights of action under Sections 1(b)(2), 15(a), 15(b) and 36(a) of the Act, a conclusion equally applicable to Section 47. That section requires separate discussion here only because of the Supreme Court's holding in *TAMA, supra,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146.

In *TAMA,* the court found an implied right of action under Section 215 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 *et seq.,* at the same time it refused to imply a private right of action under Section 206 of that act. Section 215 provides that contracts whose formation or performance would violate the act are void. The court found a "specific and limited" implied right of action in federal court under Section 215 to have the contract declared void, and to have it rescinded or its continued operation enjoined. *Id.* at 18, 100 S.Ct. at 246. Plaintiff argues that a similar right of action must be implied here to effectuate Section 47 of the 1940 Act.

In an action founded on some violation of the Act other than payment of excessive fees, the holding of *TAMA* would seem to apply and Section 47 might serve as the basis for an implied right of action. However, Congress intended the express right of action set forth in Section 36(b) to be exclusive; there was no similar exclusive, express right of action in *TAMA.* In the present context, there is no need to imply a

right of action in order to effectuate the purposes of Section 47. Plaintiff already has stated a cause of action under Section 36(b) in Count I. To go further and allow the plaintiff to imply a right of action in Count II under Section 47 against all of the defendants, including the affiliated and independent directors and the Fund, would undermine the carefully considered limits which Congress placed on this action in Section 36(b)(3).

The allegation of a cause of action under Section 47 in Count II is dismissed under Rule 12(b)(6). Instead, the plaintiff may proceed in Count I against PIMC and Paine Webber (but not against the affiliated and independent directors or the Fund) under Section 36(b). If the plaintiff establishes a violation of that section, this court may void the Agreements under Section 47,[9] but it is without authority in this context of allegedly excessive advisor compensation to permit the plaintiff to pursue an implied, independent cause of action under Section 47 against all of the defendants.

*III) Claims Under Section 20(a) of the 1940 Act and Under Section 14(a) of the Exchange Act.*

The amended complaint also alleges in Count II that Provident National Bank, pursuant to a subadvisory agreement with PIMC, its wholly-owned subsidiary, provides all investment advisory services to the Fund in consideration of 75% of the advisory fee paid by the Fund to PIMC. PIMC retains 25% of the advisory fee, but allegedly performs no service to the Fund. Count II of the complaint maintains that a proxy statement dated June 13, 1979, in which defendants solicited shareholder approval of the Advisory Agreement, failed to disclose this alleged fact. The plaintiff claims that the proxy was therefore false and misleading in violation of Section 14(a) of the Ex-

---

chapter, or of any rule, regulation, or order thereunder, is unenforceable by either party ... unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of this subchapter.

**9.** Plaintiff did not ask in her prayer for relief as to Count I that the Agreements be voided under Section 47. Section 47 is cited only in Count II, in an improper attempt to imply a right of action under that section. Plaintiff will be permitted to amend her complaint to add to Count I a prayer for relief under Section 47.

change Act,[10] and Rule 14(a)–9 adopted thereunder, as well as Section 20(a) of the 1940 Act.[11]

■ The claimed cause of action under Section 14(a) of the Exchange Act can be summarily considered. That section applies only to proxy statements registered pursuant to Section 12 of that act. The Fund's securities are specifically exempted from registration under Section 12. 15 U.S.C. § 78*1*(g)(2)(B). Proxy statements relating to the Fund's securities are governed instead by Section 20(a) of the 1940 Act. Thus, plaintiff's claim founded on Section 14(a) of the Exchange Act must be dismissed.

■ Plaintiff's claims under Section 20(a) of the 1940 Act must also be dismissed. There is no express or implied right of action where the alleged violation concerns excessive advisors fees. As has been shown, Section 36(b) provides the exclusive method of attacking such fees. See *Gartenberg, supra,* 528 F.Supp. at 1067 (". . . Section [ ] . . . 20(a) . . . [was] not intended to and [does] not establish a private right of action" in such a case).[12]

*IV) Glass-Steagal Act Claims.*

Count III of the amended complaint asserts a claim against PIMC under Sections 16 and 21 of the Glass-Steagal Act, 12 U.S.C. §§ 24 and 378.[13] These sections im-

---

**10.** Section 14(a) provides, in relevant part:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

**11.** Section 20(a) provides, in relevant part:

It shall be unlawful for any person, by use of the mails or any means or instrumentality of interstate commerce or otherwise, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security of which a registered investment company is the issuer in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**12.** Because of the result reached above, this court need not address the defendants' contentions that, in any event, Section 20(a) was not violated because the omission was not "material" and the Fund was not injured by the omission. The court also does not address PIMC's contention that only the Fund is liable for any alleged proxy violation, since it was the Fund which solicited the proxy.

**13.** Plaintiff's original complaint also alleged violations under the Bank Holding Company Act of 1956, 12 U.S.C. § 1841 *et seq.* The amended complaint dropped these allegations. The Glass-Steagal Act provides, in relevant part:

§ 24: Upon duly making and filing articles of association and an organization certificate a national banking association . . . shall have power—

\* \* \* \* \* \*

Seventh. To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; . . . The business of dealing in securities and stock by the association shall be limited to purchasing and selling such securities and stock without recourse, solely upon the order, and for the account of, customers, and in no case for its own account, and the association shall not underwrite any issue of securities or stock: *Provided,* That the association may purchase for its own account investment securities under such limitations and restrictions as the Comptroller of the Currency may by regulation prescribe.... Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by the association for its own account of any shares of stock of any corporation....

§ 378: (a) After the expiration of one year after June 16, 1933, it shall be unlawful—

(1) For any person, firm, corporation, association, business trust, or other similar organization engaged in the business of issuing, underwriting, selling, or distributing, at wholesale or retail, or through syndicate participation, stocks, bonds, debentures, notes, or other securities, to engage at the same time to any extent whatever in the business of receiving deposits subject to check or to repayment upon presentation of a passbook, certificate of deposit, or other evidence of debt, or upon request of the depositor: *Provided,* That the provisions of this paragraph shall not prohibit national banks or State banks or trust companies (whether or not

pose strict limitations on the authority of a national bank to purchase, sell, issue, underwrite, distribute, or otherwise deal in stocks and securities. Plaintiff seeks to void the Advisory Agreement and to direct payment to the Fund of profits earned by PIMC or damages suffered by the Fund as a result of this allegedly illegal agreement.

Plaintiff argues that the availability of an implied right of action for injunctive relief under Glass-Steagal was recognized by the Court of Appeals for the District of Columbia in *New York Stock Exchange, Inc. v. Bloom,* 562 F.2d 736 (D.C.Cir.1977), *cert. denied* 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978). This is not accurate. That court dismissed that Glass-Steagal action on ripeness grounds. In *dictum,* the court went on to state that, though it was "without power to make an authoritative ruling on the issue since it is not currently before us," it supposed that "an implied right of action for injunctive relief would exist *for appropriate parties* ..." *Id.,* at 742 (emphasis supplied).

■■■ Whether or not an implied right of action exists under the *Cort v. Ash* test, plaintiff is without standing to bring such an action, either for damages or injunctive relief. This was the clear holding of *Russell v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 479 F.2d 131 (7th Cir.), *cert. denied* 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 331 (1973). In that case, a participant in an open-end mutual fund, disappointed when the Fund's purchase of stock in the Penn Central Company resulted in a large loss, sought to recover on the grounds that the defendant bank's establishment of the Fund violated the Glass-Steagal Act. The Court of Appeals, by Judge (now Justice) Stevens, reviewed the purpose of·

Glass-Steagal to determine whom Congress intended to benefit by that act. The court concluded that case law supported a private right of action in bank depositors whose deposits were placed at risk in such an enterprise, and in competing companies operating other mutual investment funds.[14] However, "the position of a fund participant seeking to recover damages from the Bank is quite different." *Russell, supra,* 479 F.2d at 133. These persons were not intended to be protected by the Glass-Steagal Act. In fact, their interests in such an action are directly contrary to those of the bank's depositors, the main intended beneficiaries of the act, since the complaining fund participant seeks to inflict losses on the bank.

This is exactly plaintiff's posture in this action and the court concludes that she is without standing to bring this action. While the *Russell* case speaks only of damages, its logic extends also to the injunctive relief plaintiff seeks. This conclusion is bolstered by the fact that plaintiff is able to proceed under Section 36(b) of the 1940 Act and does not require redundant "belt and suspenders" protection under Glass-Steagal. Count III must therefore be dismissed.[15]

*V) Pendent Claims Based on Common Law Fiduciary Duty.*

Relying on *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the plaintiff asks this court to adjudicate the liability of all defendants for breaches of their common law fiduciary duty. These claims are said to have a "common nucleus of operative facts" with the federal claim.

■■■ Plaintiff overlooks the holding of *Aldinger v. Howard,* 427 U.S. 1, 14–18, 96 S.Ct. 2413, 2420–22, 49 L.Ed.2d 276 (1976),

members of the Federal Reserve System) or other financial institutions or private bankers from dealing in, underwriting, purchasing, and selling investment securities, or issuing securities, to the extent permitted to national banking associations by the provisions of Section 24 of this title; ....

**14.** Note that it was competitors like these whom the District of Columbia Court of Ap-

peals assumed would have standing in *New York Stock Exchange, Inc. v. Bloom, supra.*

**15.** The court need not and so does not reach defendants' additional claims that 1) Glass-Steagal is inapplicable because no national bank has been named as a defendant, or 2) that no implied cause of action exists under that Act, in light of the recent Supreme Court cases discussed earlier.

that a federal court may not exercise pendent jurisdiction over parties who are explicitly excluded from liability under the statute which confers federal jurisdiction. Since the only remaining basis of jurisdiction over this action, Section 36(b) of the 1940 Act, specifically excludes from liability everyone except the recipient of the allegedly excessive compensation, only PIMC and Paine Webber are subject to pendent claims. These claims therefore must be dismissed as to the affiliated and independent directors, and the Fund.

The pendent state claims might also later be dismissed as to PIMC and Paine Webber. These two defendants are simply parties to a contract with the Fund. Neither PIMC nor Paine Webber would therefore seem to owe any fiduciary duty to the plaintiff. Plaintiff has not yet fully developed her state law claims, however, and so the court reaches no final conclusion on that point here.

To the extent a pendent state claim does exist, it must involve the same operative facts as the federal claim. *Gibbs, supra.*[16] It may be that any such parallel common law action has been preempted by Section 36(b).

Finally, even if this court has the power to exercise pendent jurisdiction, it might be persuaded to exercise its discretion to refuse to do so. *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139.

The motions of PIMC and Paine Webber to dismiss these pendent claims are therefore denied without prejudice. If these two remaining defendants renew their motions, the plaintiff should address the concerns set forth here.

**16.** All claims against defendant Paul Kolton, one of the independent directors, having been dismissed, there is now complete diversity of citizenship. However, plaintiff has not sought to bring these state claims as part of a diversity action against PIMC or Paine Webber under 28 U.S.C. § 1332, and so the *Gibbs* standards for a pendent action continue to control.

**17.** It is therefore not necessary to address the independent directors' motion for summary judgment, which is denied without prejudice.

## VI) Plaintiff's Jury Claim.

As has been stated many times, the gravamen of the complaint in this action is that PIMC and Paine Webber charged the Fund exorbitant fees and that this constituted a breach of their fiduciary duties under Section 36(b) of the 1940 Act. It was in precisely such a case that Judge Pollack held that a plaintiff had no constitutional right to a jury trial. *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 487 F.Supp. 999 (S.D.N.Y.1980). This ruling was affirmed by the Second Circuit. *In re Gartenberg,* 636 F.2d 16 (1980). *See also Markowitz v. Brody,* 90 F.R.D. 542, 547–48 (S.D. N.Y.1981). Plaintiff's demand for a jury trial is stricken.

## VII) Conclusion.

The magistrate's ruling is reversed in part and adopted in part. Count I stands; under it, only Paine Webber and PIMC will remain as defendants to this action, and only under Section 36(b) of the 1940 Act.

Counts II and III are dismissed as to the affiliated and independent directors,[17] and the Fund.[18] The motions to dismiss these counts filed by PIMC and Paine Webber are also granted, except that their motions to dismiss the pendent common law claims in Count II are denied without prejudice.

Count IV, against Paine Webber only, alleges, in part, that "[u]nder the Act, it is illegal for mutual funds directly or indirectly to bear expenses related to the distribution of their shares. Accordingly, the receipt of fees from the Fund by Paine Webber for distribution services has been and is illegal." (Amended Complaint ¶ 38.) The only authority cited for this contention is Sections 1(b)(2), 15(b), and 36(a) of the 1940

**18.** The Fund, unlike the other defendants, did not renew its December 5, 1980, motion to dismiss after the amended complaint was filed. The Fund, a purely nominal defendant, is named only in Count II. That count must be dismissed for the reasons stated, even as to the Fund.

Act. (*Id.,* at ¶ 40.) Oddly, none of the 30 briefs or dozen letter briefs filed in connection with the various motions to dismiss have addressed the question whether the plaintiff has stated a claim for relief in Count IV. Thus, though the court sees nothing on the face of the cited sections which makes it illegal for the Fund to bear the expense of distribution of its shares, it will not now dismiss that count. That decision is without prejudice to Paine Webber's right to make a motion to dismiss this claim.

SO ORDERED.